BENJAMIN F. FARRINGTON v. JARED A. SEXTON, EUGENE ROBINSON AND VALENTINE HILSENDEGEN.

*General assignments—Fraud—Garnishment of assignee.*

Where the right to proceed to the trial of an issue against a garnishee depends on the state of the principal case, the court is at liberty to consider the record in that case without separate proof.

A finding of fact will not be reviewed unless there was no testimony tending to support it.

Fraud in a general assignment is fairly inferable from the fact that the goods were inventoried at $55,011.68 and were appraised at $27,272.77, while the goods on hand five weeks before inventoried about $95,000; it may also be inferred from a showing that the assets of a certain company belonged to the firm making the assignment, and had been disposed of by collusion.

A general assignee is not a *bona fide* purchaser, and general assignments are not exempted from the consequences of actual fraud that has any tendency to hinder, delay, or defraud creditors.

It is fraud to intentionally withhold from a general assignment property which ought to have been included in it.

A general assignment that is broad enough in its terms to cover any property belonging to the assignor is nevertheless invalid if property is secretly kept back from the assignee and used for private purposes and no authority is given to the assignee to take measures to set aside fraudulent transfers.

Error to Superior Court of Detroit.   Submitted April 9.   Decided April 30.

ASSUMPSIT against garnishee.   Defendant brings error.

*Douglass & Bowen* for plaintiff in error.

*Alfred Russell* for defendant in error.

CAMPBELL, J.   Farrington was sued as garnishee of James Nall, Jr., & Co.   He claimed under an assignment to him for the benefit of creditors, and the plaintiffs below assailed it as void as against them.   Upon the trial of the garnishee proceedings in the Detroit Superior Court, it was held void, for actual fraud.   The case now comes before us on the single question whether there was any testimony on which that conclusion could lawfully be based.

It is suggested that although the court inspected the principal proceedings and based the finding on them, the failure to prove them separately is an objection to the validity of the finding.   We think, however, that inasmuch as the right to proceed to the trial of the issue against the garnishee depends on the state of the principal cause, the court is at liberty to consider the record without proof.   The whole record is connected, and it would be a vain and useless ceremony to introduce proof separately when it is all necessarily together before the same tribunal.

Upon the question of fraud we have no authority to pass, unless the court below had no testimony whatever tending to prove it.   We think there was such testimony. It is not claimed Mr. Farrington was in any way to blame.   The fraud was charged and found against the

assignors.   The assignment upon its face is assumed to
be regular.

The testimony as acting on the mind of the judge of
the Superior Court indicated that the assignment was
made February 13, 1879, at which time the goods on
hand inventoried at cost $55,011.68, and were appraised
at $27,272.77; that in the early part of January, 1879,
aside from other assets, the goods on hand inventoried
at cost either $95,000 or about that amount less ten per
cent., and were represented as worth a little over $95,000.
The discrepancy between these amounts as fixed by the
cost of the goods induced the court to conclude that a
large amount of this property was fraudulently withheld
from the assignee, and not reasonably accounted for.
The testimony would justify such an inference if the court
drew it, and it is always to be borne in mind that we
have no power to determine to what extent such testi-
mony as is given should satisfy the judgment of that
court.   It was for the judge to say whether an explana-
tion, if given, convinced him of its fairness.   There was
an apparent occasion for more explanation than was given.

There was further testimony from which it was open
to claim that the assets of the Nall Manufacturing Com-
pany belonged to the firm, and had been disposed of by
collusion.

We need not go further.   If these facts or any of
them existed, the court did not go beyond the law in
concluding that a considerable amount of property had
been secretly and fraudulently kept back from the assignee
and used for private purposes.

The only remaining question is whether such dealings
are fraudulent in such a way as to vitiate the assign-
ment.   Upon this we think there is no ground for seri-
ous controversy.

A general assignee is not a *bona fide* purchaser, and
there is no rule of law which exempts a general assign-
ment from the consequences of actual fraud that
has any tendency to hinder, delay or defraud cred-
itors.   The only ground on which such assignments are

upheld is that the debtor has in good faith put all of his assets into the hands of a trustee for the sole purpose of paying his lawful debts, as far as the assets will go. It has always been held that it was fraud to intentionally withhold property which ought to be assigned.

In the present case the assignment is broad enough to cover any property which belonged to the assignors. But it does not authorize the assignee to take measures to set aside fraudulent transfers. As to those he stands in the shoes of his assignors. The creditors may attack them, as they are doing here, but the assignee takes only what the assignor owned, and no one can get relief against his own fraudulent conveyances. When parties secrete and cover up property, it is at least as likely that they may resort to fraudulent transfers as to their own possession.

It can make no difference in practical effect, and it does not lessen either the character or extent of fraud, whether property is left out of the terms of an assignment, or put where the assignee and creditors will not find it. The fraud consists in preventing the assignee and creditors from getting the benefit of it, and if that is the purpose it can make no difference by what means it is carried out. Property may be honestly omitted, but property cannot be secretly and intentionally covered up and kept out of reach without palpable dishonesty.

It is therefore not important to conjecture by what devices or in what way the property was disposed of. It is enough to justify the judgment that it was misappropriated in any way, with a fraudulent purpose. And without a satisfactory explanation that purpose can be inferred if such is the impression made on the court from the whole case.

The judgment must be affirmed with costs.

MARSTON, C. J., and GRAVES, J., concurred.

COOLEY, J. I have been unable to find any evidence of fraud in the record in this case.