## THE FIRST NATIONAL BANK OF BATH, Appellant, *v.* THOMAS WARNER, FRANKLIN N. DRAKE and ORANGE S. SEARL, Respondents.

*Evidence of transactions, and representations and promises, made prior to an assignment, is competent in an action brought to set it aside as fraudulent.*

In an action to set aside an assignment for the benefit of creditors, on the ground that it was fraudulent, the plaintiff, as bearing upon the assignor's intent to delay and defraud his creditors, offered to prove negotiations had from time to time in regard to the extension of negotiable paper which had been given by the assignor, and that pending such negotiations, the assignor promised to give security for his indebtedness, and that the plaintiff had deferred entering judgment by reason of such promises on the part of the assignor, and also upon the faith of false statements made by him that there were no mortgages upon certain real estate which he owned; that the assignor had also represented that he was perfectly good; upon the faith of which statements certain paper was extended for a period, before the expiration of which the assignment had been made.

*Held,* that the evidence offered was both competent and material, and if given would have tended to prove that the assignor in making the assignment intended to hinder and delay his creditors.

That it was competent to prove, as bearing upon the question of fraud, the nature and character of the business transactions of the assignor down to the time of the assignment; the use made of the avails of his property immediately preceding the assignment; negotiations had with his creditors relative to the payment, or the securing of the payment of their claims; representations made by the assignor to induce his creditors not to press the collection of their claims, and as to his solvency; the amount of his indebtedness and the nature of his assets.

Appeal by the plaintiff from a judgment, entered in the office of the clerk of the county of Steuben on the 29th day of August, 1887, adjudging that the assignment made by the defendant Thomas Warner to the other two defendants for the benefit of creditors was valid and not fraudulent, and that the complaint of the plaintiff be dismissed.

The action was in the nature of a creditor's bill, brought to set aside as fraudulent, a general assignment for the benfit of creditors, made by the defendant Thomas Warner to the defendants Franklin N. Drake and Orange S. Searl.

The plaintiff is a judgment-creditor of the defendant, Thomas

Warner, his judgments amounting in the aggregate to the sum of $20,000, rendered in several actions, one of which was against the said Warner, individually, and in the others the judgment was joint against him and other parties. This action attacked as fraudulent, the individual assignment of the said Warner, made on the 27th day of May, 1885, to Drake and Searl as assignees for the benefit of creditors, and sought to reach the property transferred to them to be applied in payment of the said judgments. At the time of making such assignment and for some years prior thereto, Warner was a member of the copartnership firm of F. G. Cramer & Co., doing a hardware business in the village of Cohocton, of which the said Cramer was the other member. He was also a member of the copartnership firm of Warner & Wilcox, doing business as lumbermen, composed of himself and one Albert H. Wilcox. He was also a member of the firm of Turner, Warner & Wilcox, engaged in the manufacture and sale of lumber in the city of Elmira, the other members of the firm being Albert H. Wilcox and Alexander Turner. On the same day each of the said firms made an assignment to said Drake and Searl for the benefit of their creditors. The validity of those assignments are not directly attacked as fraudulent in this action. For some time prior to the making of said assignments Warner was insolvent, which he well knew, his individual indebtedness and liabilities amounting in the aggregate above the sum of $100,000, and his individual assets were about the sum of $100,000, but not sufficient to pay his liabilities in full. All of the copartnership firms were also insolvent. Warner had personal charge and man_agement of his individual business, and was also the chief manager and financial agent of the several copartnerships of which he was a member. He appeared in the action and made answer, and on the trial he contended that the assignment was valid and was examined as a witness in behalf of himself and his co-defendants. This action was tried at the Steuben Special Term, and the court found as a fact that the assignment was made in good faith and without any intent of the assignor to hinder, cheat, delay or defraud the plaintiff or any of his other creditors. From the judgment the plaintiff appeals. All the evidence produced on the trial was contained in the case attached to the judgment-roll. Other facts found and set forth

in the decision, bearing on the question, considered by the court, are referred to in the opinion.

*J. F. Parkhurst* and *M. Rumsey Miller*, for the appellant.

*Theodore Bacon*, for the respondents.

BARKER, P. J.:

Nothing appears on the face of the assignment which indicates that the assignor has applied any of his property to a fraudulent or unlawful purpose, or that the trust created is not in all respects legal and valid. In terms, the assignor has devoted all his property, not exempt from sale on execution, to the payment of his debts and to the discharge of his legal obligations.

The plaintiff, however, charges that the transaction was a fraudulent one on the part of the assignor, and that he made the assignment and placed his property in trust, with the intent to hinder, delay and defraud a portion of his creditors, and among them the plaintiff; and that by a secret arrangement made with the assignee, before or at the time of making the assignment, he should be permitted to possess and enjoy for his own use a portion of the property assigned, and continued to manage and carry on the business; and that, as a matter of fact, a portion of the debts preferred, were fraudulent and fictitious. In support of this charge of fraud, the plaintiff produces considerable evidence, but the learned trial court upheld the assignment and found specifically, that the same was made in good faith and not for any fraudulent purpose. The learned counsel for the appellant, in an earnest and elaborate argument, insists that the findings of fact were against the weight of evidence, and the accusation of fraud was well supported; and for that reason, independently of all other questions presented by the case, the judgment should be reversed and a new trial granted.

This court has the power, and it is its duty, on an appeal from a judgment entered upon the decisions of the court, where the trial was without a jury, to examine the evidence presented on the trial and determine whether the conclusions of fact, as found by the trial court, are sustained by the evidence, and if not, to reverse or modify the judgment as the justice and equity of the case may require. We have examined the evidence with much attention, for

the purpose of acquainting ourselves with the general features and circumstances of this somewhat involved and intricate case, but as we have reached the conclusion that the present judgment must be reversed and a new trial granted because competent and material evidence offered by the plaintiff, on the question of fraud, was erroneously excluded therefrom. For that reason it is unnecessary to pass on the question whether the trial court found contrary to the evidence on the issue of fraud. We also deem it improper for us to discuss and declare our views as to whether the charge of fraud was sustained or not on the evidence contained in the record now before us. On another trial, the evidence may be materially different and our views as to the force of the evidence, as now presented, would not aid and might embarrass the court on a re-trial.

The assignor's individual and copartnership indebtedness and liabilities exceed the sum of $250,000. He received from the First National Bank of Corning large accommodations for several years before his failure, and during the same period, the plaintiff loaned to him, and the firms of which he was a member, large sums of money; and at the time that the assignment was made, his indebtedness to the plaintiff amounted to a large sum, a portion of which was included in the judgments upon which this action was based. The assignee Drake was owner of two-thirds of the stock of the Corning Bank, and he was its managing officer, and on the day the assignment was executed the bank transferred to him all its claims and demands against the assignor and the copartnership firms of which he was a member. In all the assignments, Drake was made a preferred creditor, and the amount of his claims, as set out in the schedules, was greater than the value of all the property embraced in the several assignments. At the time of making the assignment the assignor was also a member of the firm of Turner, Warner & Wilcox, doing business as lumbermen at Elmira, in the State of Pennsylvania, and he was an indorser for that firm in a large amount of commercial paper, held by the Corning Bank, and for which it held securities, and such indebtedness and the securities were also transferred to Drake before the assignment was delivered. On the 26th day of January, 1885, Warner executed and delivered to the Corning Bank a mortgage upon several pieces of land situated in the State of New York, as a security for the payment of a sum not

exceeding $75,000 as a continuing security; for the payment of all promissory notes, bills of exchange, drafts, checks, acceptances and indorsements of Thomas Warner, and of Turner, Warner & Wilcox, and of Warner & Wilcox, which the said bank then held and owned, and which it might thereafter own, and of all renewals thereof, and to secure all the indebtedness which the same parties, or either of them, might owe, according to the character and conditions of such indebtedness; and in all other respects the said instrument contained the usual clauses of real estate mortgages. The same was never recorded. If the assignment is sustained, the plaintiff will receive nothing out of the assets upon its indebtedness from the assignor's property, because of its insufficiency to pay in full the preferred indebtedness.

At times, for the period of two or three months before the making the assignment, a large amount of the assignor's paper was past due and under protest, and was held by various parties, including the plaintiff, in the vicinity where the assignor was doing business ; and among those holding such paper was a banking-house doing business under the name of the Hallock Bank, of which William H. Hallock was one of the members. In April this firm held some eight or ten thousand dollars of protested paper, and a like amount which had not then matured. Negotiations were had from time to time between the assignor and Mr. Hallock, in regard to the payment of such indebtedness, the assignor requesting a renewal of the papers and that the time of payment be extended, which resulted in an arrangement, which was consummated on the fifteenth day of May preceding the assignment, by which the paper was renewed and the time of payment extended beyond the twenty-seventh day of May, the date of the assignment. As bearing upon the assignor's intent to delay and defraud his creditors, the plaintiff offered to prove that during these negotiations Warner promised to give Hallock security for his indebtedness ; that in March preceding, an action was commenced upon one of the notes, held by the Hallock Bank, against the firm of Cramer & Warner, by personal service upon both of those parties, and that no answer was interposed, and twenty days having expired, the plaintiffs might have entered judgment ; and that it was part of the said arrangement, made and concluded on the fifteenth day of May, that judgment should not be entered in that

action, and was not until after the assignment; and, for the purpose of securing an extension of time and delay in entering judgment in that action, Warner stated to Hallock that he owned all his real estate, and that there was no mortgage upon it, and that upon the faith of such statements an extension of time was granted by Hallock.

A further offer was made to prove that during such negotiations Warner represented that the firm of Cramer & Warner was solvent and able to pay their debts. This was objected to by the defendants as incompetent, and the same was excluded and the plaintiff excepted. The plaintiff also offered to prove by Mr. Allen, the cashier of the Hallock Bank, that in December, 1884, the bank urged Mr. Warner to pay the paper which it then held against him; that such interviews and conversations were continued at different times until the latter part of the month of April, when Mr. Warner told the cashier, when conversing upon the subject of the payment of the paper held by the bank, that he was perfectly good and that he would pay the paper, and solicited Mr. Allen to extend the time of payment, and that the same was rediscounted, so as to extend the time of payment beyond the day of making the assignment; and that in consenting to such renewal the cashier relied upon the statement of Mr. Warner that he was good, and that Mr. Warner knew that such statements were false at the time he made them. This evidence was objected to by the defendants as incompetent and immaterial, and was excluded, and the plaintiff excepted. This evidence was, as we think, both competent and material; and if it had been received would have tended to prove that the assignor in making the assignment intended to hinder and delay, and also to cheat and defraud his creditors. The statute declares that every conveyance or assignment made with intent to hinder, delay or defraud creditors is void. (3 R. S. [7th ed.], 2329.) If either party to the conveyance had in mind to accomplish that which the statute condemns as fraudulent, then the transaction cannot stand when assailed by the creditors of the assignor. If the assignor in conveying the title of his property to the assignees was actuated by the fraudulent intent condemned by the statute, the assignment cannot be upheld, although the assignees were wholly innocent of any fraudulent purpose on their part. (*Starin* v. *Kelly*, 88 N. Y., 418; *Loos* v. *Wilkinson*, 110 id., 195.)

The assignor is a party defendant in this action, and he, in his answer, denied all allegations of fraud charged in the complaint, and insisted on the trial that the assignment was valid, and was not made with intent on his part to cheat and defraud his creditors, and, as against him, it was competent to prove, as bearing on the question in issue, the nature and character of his business transactions down to the time he made the assignment and delivered up the possession of the assigned estate to the assignees; the use he made of the avails of his property immediately preceding the assignment; the negotiations he had with his creditors relative to the payment or securing the payment of the same; the representation which he made, if any, to induce his creditors not to press the collection of their debts, and the statements which he may have made to them during such negotiations as to his solvency, the amount of his indebtedness and the nature and character of his assets. For the purpose of testing the motives and integrity of an insolvent debtor in disposing of his property with a view of securing one creditor in preference to another, it is, as a general rule, permissible to inquire into the details of his business transactions and the manner in which he has managed his property for such a length of time immediately preceding the assignment as will throw the least light on the question of his intent. The evidence offered and rejected should have been received.

If the negotiations with the Hallock Bank were of the character claimed by the plaintiff, and the assignor made the representations as alleged, they would have tended to prove that Warner then had it in mind to make the assignment, and that it was part of his scheme to prevent the entry of judgments against him, and to postpone the time of payment of his indebtedness to that bank. The ruling of the court condemned, as incompetent, all evidence of this character, and it cannot now be said by this court that the plaintiff was not able to produce evidence of similar dealings and transactions with his other creditors, whose debts were past due, and who resided in the neighborhood of his home office. These negotiations were so near the day when the assignment was executed; and as they related to his financial affairs, his statements to and his negotiations with his creditors were in the nature of *res gestæ* declarations on the question of fraud within the rule as stated in *Loos* v. *Wilkinson* (*supra*). (See, also, *Rothschild* v. *Salomon*, 20 N. Y. St. Rep., 59.)

For the purpose of determining the question of fraudulent intent on the part of Warner in making the assignment, the court held that, as matter of law, " the allegations of fraud must be supported by such a just preponderance of evidence as makes the proof of fraudulent intent satisfactory." This conclusion of law was followed by others which declared that the assignment was valid, and not fraudulent and void, and that the defendants were entitled to judgment against the plaintiff upon the issues in this action in accordance with " the foregoing findings of fact and conclusions of law," and dismissing the complaint on its merits. We refer to the rule of evidence, as stated by the trial judge, by which the questions of fraud were determined, not for the purpose of discussing its accuracy, but to state that we pass the question without consideration, as there must be a new trial for the error before mentioned.

The judgment is, therefore, reversed and a new trial granted, with costs to abide event.

DWIGHT and MACOMBER, JJ., concurred.

Judgment reversed and new trial granted, with costs to the appellant, to abide the final award of costs.