PHILIP D. ARMOUR, JONATHAN D. ARMOUR AND PHILIP D. ARMOUR, JR., PARTNERS AS ARMOUR & COMPANY, PLAINTIFFS IN ERROR, VS. DAVID H. DOIG, DEFENDANT IN ERROR.

1. In the trial of an action at law brought by a creditor of the assignor, attacking an assignment for the benefit of creditors, declarations and statements made by the assignor within six months before the date of the deed of assignment tending to show that he had a much larger amount of property than he turned over to his assignee, it appearing that he had suffered no material losses between

Armour & Company—Syllabus.

the date of his declarations and statements and the date of his assignment, are competent evidence upon the questions whether he did turn over all his property to his assignee, and whether the assignment was fraudulent and void, and the exclusion of such evidence was erroneous.

2.  A deed of assignment which requires the assignee to sell the assigned property with all reasonable dispatch does not necessarily impose upon the assignee the duty of proceeding in any manner contrary to the statutory directions, and is not for that reason void.

3.  A deed of assignment which conveys a part of the assigned property "subject to homestead  exemption" is not void because the assignee is thereoy charged with a trust in favor of the assignor, when it is followed by a general conveyance of all the assignor's property, "except such property as is exempt by law from levy and sale under execution and laws of Florida," and it appears from the whole deed that the assignor did not intend to waive his exemption, but did intend to claim it.

4.  A deed of assignment is not void because of a provision which authorizes the assignee, out of the proceeds of the trust property, to pay and discharge all just and reasonable expenses of executing the assignment and carrying into effect the trust created, together with all legal and proper compensation and commissions of the assignee for his services in executing the trust.

This case was decided by Division A.

Writ of Error to the Circuit Court for Duval County.

*A. W. Cockrell & Son*, for the Plaintiffs in Error;

*W. B. Young*, for Defendant in Error.

## STATEMENT.

On May 17th, 1898, plaintiff in error sued Harry A. Henry in assumpsit, and on the same day filed affidavit in garnishment, upon which writ of garnishment was sued out and served the same day on D. H. Doig, as garnishee. On July 4th, 1898, Doig answered the writ of garnishment saying "that he is not indebted to the said defendant, nor was he so indebted at the time of service of said writ, nor at any time between the service of said writ and filing of this answer. That he has no money, goods, chattles, credits or effects of the said defendant in his hands, possession or control, nor had he same at the time of the service of said writ, nor at any other time between the service of said writ and the filing of this answer, except certain property claimed by the defendant as exempt from forced sale under process of any court under the constitution of the State of Florida, he claimed to be the head of a family and residing in this State; that he knows of no other person indebted to said defendant or who may have any effects of said defendant in his hands, and said Doig, garnishee, prays to be dismissed." the traverse was submitted to a jury who found a verdict Armour & Company traversed the answer of Doig. On December 16th, 1898, the cause upon the issues raised on the traverse was submitted to a jury who found a verdict for the garnishee, and thereupon a judgment was entered by the Circuit Court of Duval County discharging the garnishee and dismissing the garnishment proceedings. A writ of error from this judgment was sued out to the January term, 1899, of this court.

On the trial the plaintiff introduced and read in evidence without objection the files and proceedings, including the final judgment, in the suit of Armour & Company v. Harry A. Henry, which was begun on May 17th,

1898, the garnishment process, issued and served on Doig as garnishee on same day, the plea of "never indebted" to the declaration in said suit, and proof that the said plea was withdrawn when the case was called for trial, and that judgment was rendered for plaintiffs, Armour & Company, against Harry A. Henry for $2,976.45.

Plaintiffs produced from the possession of D. H. Doig and offered and read in evidence the original writing executed to Doig on May 16th, 1898, by Harry A. Henry and the record thereof, purporting to be a deed of assignment for the purpose and confining the introduction solely to the purpose of showing the date of the execution and recording thereof, and the property mentioned therein, and the property in terms excepted therefrom, the trusts created or sought to be created thereby, and the acceptance of said trusts by the said Doig, as recited therein, and to show that the trusts in terms created by said writing were not the trusts the statutes of Florida appoints and makes necessary to a valid conveyance by way of a general assignment, executed by an insolvent for the benefit of his creditors. This writing was read in evidence without objection, and is as follows: "This indenture made this 16th day of May, A. D. 1898, between Harry A. Henry, of the city of Jacksonville, county of Duval, and State of Florida, party of the first part, and David H. Doig, of the same city, county and State, party of the second part, witnesseth, that whereas the party of the first part is indebted to divers persons in different sums of money, which he is unable to pay in full, and he is desirous of providing for the payment of the same as far as it is in his power by an assignment of all of his property for that purpose: Now, therefore, the said party of the first part in consideration of the premises and of the sum

of one dollar to him paid by the party of the second part
before the execution of these presents, the receipt where-
of is hereby acknowledged, has granted, bargained, sold,
conveyed, transferred and set over, and by these presents
does grant, bargain, sell, convey, assign, transfer and set
over unto the party of the second part, his heirs, succes-
sors, and assigns forever all and singular the following de-
scribed lands, to-wit. (It is not necessary to describe the
lands or mortgages for $2,000 and interest to which they
were subject.)    Also all and singular the entire stock of
merchandise consisting  of staple and fancy  groceries,
meats, canned goods, cigars, tobacco, wooden and willow
ware, &c., safe, counters, furniture, fixtures, scales, show
cases, &c., now owned by me and being situated in the
store known as number 102 Main street, in the City of
Jacksonville, Florida, and in the warehouse adjoining;
said store and warehouse being situated on part of lot
four (4) in block thirty-two (32) in the city of Jackson-
ville, according to the I. D. Hart map of said city, at the
corner of Main and Forsyth streets, now occupied by me,
including all horses, mules, wagons, harness, &c., now
owned by me, *subject to homestead exemption.*. And also
all and singular the lands, tenements, hereditaments, ap-
purtenances, goods, chattles, bonds, promissory notes,
debts, claims, real and personal property and effects of
every kind and description belonging to the said party of
the first part, wheresoever the same may be situated, *ex-
cept such property as is exempt by law from levy and sale
under execution, under the constitution and laws* of the
State of Florida.   To have and to hold the same and every
part thereof unto the said party of the second part, his
heirs, successors and assigns.   In Trust nevertheless to
take possession of the same, sell the same with all reason-

able dispatch, and convert the same into money, and also to collect all of such said debts, claims and demands hereby assigned as may be collectible, and that out of the proceeds of such sales and collections, 1st, to pay and discharge all just and reasonable expenses and charges of executing this assignment and to carry into effect the trust hereby created, together with all legal and proper compensation and commission of the party of the second part for his services in executing the trust. 2nd, to pay and discharge in full, if the residue of such proceeds is sufficient for that purpose, all the debts and liabilities now due or to grow due from the said party of the first part, with interest money due, or to grow due, and if the residue of such proceeds shall not be sufficient to pay said debts and liabilities and interest money in full, then to apply the residue of such proceeds to the payment of such debts and liabilities ratably and in equal proportion, and distribute the same among the several creditors of said party of the first part in equal proportion to the respective demands. 3rd, that if after the payment of all of said debts and liabilities in full, there be any remainder or residue of said property, or proceeds, to repay the same to the said party of the first part, his executors, administrators or assigns. And in furtherance of the premises the said party of the first part does make, constitute and appoint the said party of the second part his true and lawful attorney, irrevocable with full power and authority to do all acts and things which may be necessary in the premises in full execution of the trust hereby created, and to ask, demand and recover from every person or persons all the property, not exempt as hereinbefore stated, all debts and demands due and owing and belonging to the said party of the first part, and to give ac-

quittances and discharges for the same, to sue, prosecute, defend and implead for the same, and execute and acknowledge, and deliver all necessary deeds, assignments and conveyances. And the said party of the first part does hereby authorize the said party of the second part to sign the name of said party of the first part to any check, draft, promissory note, or other instrument in writing which is payable to the order of said party of the first part, and to sign the name of the party of the first part to any instrument in writing whenever it shall be necessary so to do to carry into effect the object and design of this trust. The said party of the second part does hereby accept the trust created and reposed in him by this instrument, and agrees and covenants to and with the party of the first part that he will faithfully and without delay execute the said trust according to the best of his skill, knowledge and ability. In witness whereof the said parties to these presents herewith set their hands and seals the day and year first above written.

HARRY A. HENRY, (Seal.)<br>
DAVID H. DOIG, (Seal.)

Executed in presence of

ARTHUR F. PERRY,

G. A. CLARK.

This writing was duly acknowledged and recorded the same day in the public records of Duval county, Florida.

Attached to this writing was a separate relinquishment of dower and a release by way of conveyance of all interest to D. H. Doig as assignee, by Edna M. Henry, wife of the grantor therein, duly executed and acknowledged the same day. There was also filed and recorded the same day, the following affidavit of Harry A. Henry.

State of Florida,
  Duval County.

Personally appeared before me Harry A. Henry, to me
well known who being duly sworn according to law depos-
es and says, that he has placed in the hands of and assign-
ed to David H. Doig all of his property, and that the true
intention of his assignment to said David H. Doig is to
assign to him and place in his hands as assignee, as afore-
said all of said deponent's property of every description,
except such as is exempted by law from forced sale, to be
divided among deponent's creditors in proportion to their
respective demands.

Sworn to and subsrcibed before
   me this 16th day of May, A. D.
   1898.

                    ARTHUR F. PERRY, (Seal.)
Notary Public, State of Florida.

                    HARRY A. HENRY, (Seal.)

The plaintiff then proved by D. H. Doig that the whole
property actually delivered to, and taken possession of by
him, under said deed of assignment, was appraised by H.
C. Aird and William Knauer shortly after the deed was ex-
ecuted, and the total value thereof was $9,479.96. This val-
uation included the stock of goods valued at $3,390.88,
store fixtures, book accounts, and bills receivable, which
last were valued at $5,144.47, as well as the household fur-
niture of the said Henry; that a day or two thereafter
he, the said Doig, set aside under said writing to said
Henry $250 worth of fixtures in the store at the corner of
Main and Forsyth Streets, wherein the said Henry had
been carrying on before May 16th, 1898, the grocery bus-
iness; $550 worth of book accounts, and $200 worth of
household furniture so delivered to and taken possession

of by him, the said Doig, and claimed by said Henry as exempt to him under said writing under the law; that upon taking possession of said stock of groceries he, the said Doig, continued to sell the goods by retail, until July, 1898, when he sold the entire remnant to one Clark, and that during this period of selling by retail he employed the said Henry at two dollars per day; that since he so closed out said remnant the grocery business had been conducted therein by the Magnolia Grocery Company, a corporation; that during the time Henry conducted his business at that point it was called the Magnolia Grocery; that he, the said Doig, had on hand in money realized from the proceeds of sale of the property so delivered to him under the deed of assignment (except the property so claimed as exempt and so delivered to said Doig) $4,300 when he filed his answer herein, and has now about $5,300 in money, and that Henry told witness at the time the deed was executed to him on May 16th, 1898, that his, Henry's indebtedness was between $12,000 and $14,000.

Plaintiff introduced Harry A. Henry as a witness, who testified that subsequent to December 1st, 1897, he had suffered no special loss or business disaster of any kind except such losses as were usual and incidental to the failure to pay, or delay in paying, by customers to whom he had extended credit, in the usual course; that before December 1st, 1897, and sometime in the fall of that year he had suffered a loss of a thousand dollars in the going down of a boat of the Christopher line carrying freight for him; that his indebtedness, as stated by the witness Doig, was between twelve and fourteen thousand dollars; that this amount of indebtedness had not varied between December 1st, 1897, and May 16th, 1898; that the aggregate amount of stock carried by him had not varied specially between those dates. This witness, on examination by defendant, testified that the writing he executed May 16th, 1898, to Doig conveyed all his property, and

---

---

that he actually turned over and delivered to the assignee all property of whatever kind he then owned. Plaintiff then proved by witness Henry the genuineness of a signature purporting to be his to a writing, exhibit 3, bearing date December 1st, 1897, purporting to be.addressed to the plaintiff by him, which writing is as follows:

Dcember 1st, 1897.

Messrs. Armour & Company,

    Chicago.

Gentlemen:—For the purpose of obtaining credit wit... you for merchandise which I may hereafter obtain and purchase of you, and for extension of time by note or otherwise on such purchase I (of the firm name of) H. A. Henry of the City of Jacksonville, in the county of Duval, and State of Florida, do make the following full and complete statement of my resources and liabilities." The paper then shows an aggregate of $34,000 assets, and $8,400 liabilities, giving the items, and concludes: "The above statement both printed and written, has been carefully read by me, and is a full and correct statement of my financial condition, and I hereby agree to notify you in advance of any change in the above statement, or anything affecting our financial situation.

(Signature) H. A. HENRY."

In presence of

Mrs. S. B. Wendt."

Plaintiff further produced and proved the genuineness by the witness, of a writing, exhibit "4," addressed by him December 1st, 1897, to "The Bradstreet Company" as follows, omitting the preliminary matter, which is immaterial:

"Savannah,        189.....

Mr. H. A. Henry.

We respectfully request a statement of your present financial condition or copy of your last balance sheet on the within form.  The latest statement from you which we have on file is under date of        189   , and we beg to suggest that you will note on last page here of anything which has occurred since that date that may be considered of sufficient importance to form a part of our permanent record of your house, such as the purchase or sale of real estate, the admission  or  retirement  of  partners, change of location, opening of branches, fires or anything else of moment.  We enclose an addressed envelope for your use in returning the statement after it has been prepared.                                               •

The Bradstreet Company
Per......................

Dec. 1st ,1897."

The Bradstreet Company,

Gentlemen:—In response to your request for a statement, the following is submitted showing my condition as it appeared on the......of....189.., same being based on........viz: Please state if estimate or inventory, giving date."  Then follows a statement of assets of $34,500, of liabilities of $8,400 and net credit of $26,100, and concludes:

"(Official signature) H. A. HENRY."

The plaintiff further produced one Coates and one Conroy, agents of the plaintiff's, and proposed to prove by them that within thirty days before August 16th, 1896, the said Henry had assured said witnesses as the agents of the plaintiffs, that his grocery business he was conducting was in a prosperous condition.  The defendant Doig ob-

jected to the introduction of each of the writings number-
ed 3 and 4, and to the proposed testimony of each of the
witnesses Coates and Conroy; each of his objections was
sustained by the court, and each of the rulings of the
court in sustaining the objections was excepted to by the
plaintiff.

This was all the evidence introduced or proffered in the
case, and upon the evidence so introduced, the parties
having concluded their testimony, the court of its own
motion charged the jury as follows:  "Under any view of
the law in this case you can only render a verdict for the
garnishee. You will, therefore, return a verdict in favor
of the garnishee in this case;" to which charge of the
court the plaintiff then and there excepted.  A verdict
and judgment were then given as before recited, for the
garnishee.

The assignments of error are, first, the court erred sev-
erally in sustaining severally defendant's objections sev-
erally, to the introduction of the several writings, so
marked No. 3 and 4, in the bill of exceptions, and ex
cluding the same from the jury.  Second, the court erred
severally in sustaining severally the defendant's several
objections to the proffered testimony of the several wit-
nesses, Coates and Conroy and excluding the same from
the jury.  Third, the court in the charge to the jury given
"mero motu" to return a verdict in favor of the garnishee
in this case erred.

HOCKER, J. (after stating the facts.)

The first and second assignments of error may be treat-
ed together.  The written declarations of his financial
condition referred to as exhibits 3 and 4 were made De-
cember 1st, 1897.  The deed of assignment was executed
May 16th, 1898.  Henry testified that his financial con-
dition had not substantially changed between those dates.

In exhibits 3 and 4 he had stated that his total assets were worth $34,000, and his total liabilities were $8,400, and his net wealth $26,100. The total of the property turned over by Henry to his assignee, Doig, was appraised at $9,478.96. At the time Doig filed his answer herein he testified that he had realized from the assets $4,300, not including the exempted property, and that he had on hand $5,300 at the time of the trial, viz: December, 1898, seven months after the date of the assignment. It is contended by the attorney for the defendant in error that the Circuit Judge did not err in refusing to allow the plaintiff to introduce the statements of Henry made to plaintiffs and the Bradstreet Company (exhibits 3 and 4) on the ground "that false statements made by the assignor as to his financial condition, made before the assignment, and unconnected therewith, do not support the allegations of fraud in the assignment." Authorities are referred to in the brief of defendant in error which sustain this contention. On the part of the plaintiff in error, however, it is contended that this evidence was not offered for the purpose of showing that the statements therein made were false, but that they were *true*, and that they tended to show the assignor Henry had not turned over to his assignee, Doig, all his property, but was fraudulently concealing portions of his property so as to make the assignment fraudulent and void as to the plaintiff in error, who was a judgment creditor. If the assignor intentionally withheld or secreted a part of his property, and did not turn the same over to his assignee, this would have been a fraud on the creditors of the assignee, which would have rendered the assignment void. Coursey v. Morton, 132 N. Y. 556, 30 N. E. Rep. 231; Burrill on Assignments, sec. 314; Farrington v. Sexton, 43 Mich. 454, 5 N. W. Rep.

654; Parker v. Cleveland, 37 Fla. 39, 19 South. Rep. 344.

If the evidence contained in the statements made by Henry to plaintiffs and the Bradstreet Company, and referred to as exhibits 3 and 4, would have had a tendency to show to the jury that Henry had assets which he did not turn over to his assignee, it seems to us that the plaintiff should have been permitted to introduce it, inasmuch as Henry testified that he had suffered no material losses and his business had not materially changed between the dates of these statements (Dec. 1, 1897) and the date of the assignment (May 16, 1898). Farrington v. Sexton, *supra;* Roberts v. Victor, 54 Hun, 461, 7 N. Y. S. 777.

While not intending to pass upon the sufficiency of this evidence to establish the indicated fraud, we think it should have been submitted to the jury with the other evidence, and the jury should have had an opportunity to pass upon it. McNamara v. Corporation of New Melleray, 88 Iowa, 502, 55 N. W. Rep. 322. This court can not determine what would have been the effect of this testimony if it had been submitted to the jury. Hays v. Ernst, 32 Fla. 18, 13 South. Rep. 451; Elliott App. Pro. sec. 594; 2 Ency. Pl. & Pr., 532 note 2. It is contended by defendant in error that this evidence was properly ruled out because it had a tendency to impeach the witness Henry who was introduced as a witness by the plaintiff, and therefore could not be impeached by the plaintiff. The witness Henry was introduced by the plaintiff, and on examination by the defendant's attorney did testify that he had turned over all his property to his assignee, Doig. This testimony was given by Henry in direct answer to the defendant's attorney, and not in cross-examination upon any matter upon which the plaintiff had questioned him. Henry, however, was an adverse witness, and there

is no legal reason why his testimony should not have been controverted by the plaintiff. The circumstances and occasion of his former statements having been sufficiently brought to his attention, and this the proffered and rejected evidence tended to do. Rev. Stats. sections 1101 and 1102; 3 Jones (Burr W.) on Evidence, section 861; Webber v. Jackson, 79 Mich. 175, 44 N. W. Rep. 591; Montgomery v. Knox, 23 Fla. 595, 3 South. Rep. 211; Croker v. Agenbroad, 122, Ind. 585, 24 N. E. Rep. 169. As it had a bearing on the facts in issue, we think the court below erred in rejecting the proffered testimony of the plaintiffs' witnesses Coates and Conroy. First Nat. Bank of Bath v. Warner, 55 Hun, 120, 8 N. Y. S. 765. A wide latitude is allowed on the proof of fraud. C. B. Rogers Co. v. Meinhardt, 37 Fla. 480, 19 South. Rep. 878. It can be added that the witness Henry being an interested one, it was for the jury to determine what weight, if any, they should give his testimony. Elwood v. Western Union Telegraph Co., 45 N. Y. 549; 6 Ency. Pl. & Pr., 696, and note 2, and this comment will be particularly applicable to the third assignment of error. Quock Ting v. United States, 140 U. S. 417, 11 Sup. Ct. Rep. 733, 851.

It is strenuously contended by the plaintiff in error that the deed of assignment offered in evidence by him is void as containing purposes and trusts which are in violation of our law providing for assignments for the benefit of creditors. It is objected that the deed only requires the assignee to take possession and sell the assigned property "with all reasonable despatch" and that this is in conflict with the statute (section 2312 Rev. Stats.) which provides that the assignee "shall as soon as the foregoing provisions have been complied with proceed to dispose of all the property mentioned in the deed of assignment to

him to the best interests of all the parties concerned at public or private sale as to him may seem best." We do not think that the language of the deed which is criticised necessarily imposes upon the assignee the duty of proceeding in any manner contrary to the statutory directions in disposing of the property. Dorr v. Schmidt, 38 Fla. 354, text 362, 21 South. Rep. 279. If he followed strictly the statute he would not violate the letter or spirit of the directions in the deed, and unquestionably he should follow the statute.

It is also insisted that a part of the property described in the deed is conveyed to the assignee charged with a trust in favor of the assignor, because it is conveyed "subject to homestead exemption." This phase "subject to homestead exemption," taken by itself is doubtless subject to criticism, and is of somewhat ambiguous meaning, but it is followed in the deed by a description of all the property of the grantor, general in its terms, "except such property as is exempt by law from levy and sale under execution under the constitution and laws of Florida." In Barton v. Fitzgerald, 15 East, 530, Lord Ellenborough said: "It is a rule of construction that the sense and meaning of the parties in any particular part of an instrument may be collected *ex antecedentibus et consequentibus;* every part of it may be brought into action in order to collect from the whole one uniform and consistent sense, if it may be done." This rule was approved and applied by the court in that case. Applying the same rule here there appears to be no doubt that the assignor intended to convey all his property to the assignee, "except such property as he might exempt under the law, and this under the decisions of this court he might do without violating the assignment law of the State. 17

12 S. C.

Am. & Eng. Ency. of Law (2nd ed.) 4. In Dorr v. Schmidt, 38 Fla. 354, 21 South. Rep. 279, on page 362, this court has said: "An assignment, though voluntary under the statute, should not be construed to deprive one of a constitutional right, by waiver, when it is clear that he did not intend to waive it, but claimed and insisted on the same in the deed of assignment itself. * * * As the purpose expressed and understood at the time of the execution of the assignment in question was simply to claim exemptions to which the assignor was entitled by law out of the property assigned, there was no fraud in law or fact in the execution of the instrument." The record shows that the assignor, a day or two after the execution of the deed of assignment, selected $1,000 worth of the personal property as exempt under the exemption laws which was set aside by the assignee to him without apparent charge or burden of any kind upon the trusts for the benefit of creditors, and in conformity with the intent of the deed.

There is also some criticism of the provision of the deed authorizing the assignee, out of the proceeds of the trust property, to first pay and discharge all just and reasonable expenses of executing the assignment and carrying innto effect the trust created, together with all legal and proper compensation and commission of the assignee for services in executing the trust. It is not apparent that these specified purposes of the trust are contrary to the statute, and are not such as are perfectly consistent therewith. Dorr v. Schmidt, *supra,* pp. 363 and 364. The assignee, if he properly performed his trust, would be entitled to reasonable compensation for his services, and would be reimbursed all reasonable and necessary expenses incurred in administering the trust, even if the deed

of assignment did not specifically provide for these allowances. 3, Am. & Eng. Ency. of Law (2nd ed.) 117.

Because of the errors in refusing the plaintiff the right to introduce in evidence the written statements referred to as exhibits 3 and 4, and the proffered testimony of the witnesses Conroy and Coates, the judgment of the Circuit Court in said cause is reversed and a new trial ordered at the cost of the defendant in error.