[Decided at PENDLETON July 31, 1897.]

## STAHL *v.* OSMERS.

(49 Pac. 958.)

PARTNERSHIP — RIGHTS OF FIRM CREDITORS.*—Simple contract creditors of a partnership have not such a lien upon the assets of the firm as will enable them to follow and subject such assets, or the proceeds thereof, to the payment of the firm debts after all partners have parted with their interest therein.

From Morrow: STEPHEN A. LOWELL, Judge.

Suit by Mrs. J. H. Stahl and others against Dan Osmers and others to compel the vendees of partnership property acquired from the individual partners to account for and apply the proceeds thereof to the payment of partnership debts. The facts are practically undisputed, and the only controversy is about the application of the law thereto. On July 6, 1893, the defendants Dan Osmers and Mat Hughes were partners in the saloon business at Heppner, and were the owners of a stock of wines, liquors, and cigars of the alleged value of $800, and were insolvent. On that day the partnership property was attached for the individual debt of Osmers at the suit of Ruehl, and un-

*NOTE.— There is a short monograph with the case of *Davies* v. *Atkinson,* 7 Am. St. Rep. 377, on Misapplication by a Partner of Partnership Property in Payment of Individual Debts. See also *Goldthwaite* v. *Janney,* 28 L. R. A. 161 (48 Am. St. Rep. 62), where the learned editors have added to the original opinion very elaborate notes on The Rights of Partnership and Other Creditors to Partnership Real Estate.

The following annotated cases contain a thorough review of the law concerning the application of the assets of insolvent partnerships, the remedies of individual and firm creditors as against each other, and the rights of firm creditors to follow partnership property that has been disposed of by the partners in payment of their private debts: *Yorks* v. *Tozer,* 28 L. R. A. 86 (50 Am. St. Rep. 395); *Smith* v. *Smith,* 43 Am. St. Rep. 369; *Thayer* v. *Humphrey,* 51 Am. St. Rep. 911 (30 L. R. A. 549); *Darby* v. *Gilligan,* 6 L. R. A. 740; *Goldsmith* v. *Eichold,* 33 Am. St. Rep. 97; *Pott* v. *Schmucker,* 57 Am. St. Rep. 425; *Jackson Bank* v. *Durfey,* 48 Am. St. Rep. 596.

See *Russell* v. *Clark,* 57 Am. St. Rep. 436, for a monographic note concerning The Levy on Partnership Assets of a Writ Against One Partner Only.—REPORTER.

der an execution on a subsequently recovered judgment his interest therein was sold to the defendant William Hughes for the sum of $200. On the day following the attachment, the other partner, Mat Hughes, sold and transferred all his interest in the firm property to the defendant John Hughes for the sum of $600, who, together with the purchaser at the sheriff's sale, took possession of the entire partnership property, and disposed of it for their own use and benefit. The plaintiffs,—who are creditors of the firm of Osmers & Hughes,—having reduced their claims to judgment, and an execution having been issued thereon, and returned *nulla bona*, began this suit on March 10, 1894, to compel the defendants and John Hughes to account for and apply in payment of their judgment the proceeds of the property formerly belonging to said partnership. The decree of the court below was in favor of defendants, and plaintiffs appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Frank Kellogg*.

For respondents there was a brief over the names of *Mr. G. W. Rea* and *Ellis & Lyons*, with an oral argument by *Messrs. Rea* and *Lyons*.

MR. JUSTICE BEAN, after making the foregoing statement, delivered the opinion of the court.

The complaint charges fraud in the sale and transfer by the defendant Mat Hughes of his interest in the partnership property to his co-defendant, John

Hughes. But this allegation is wholly unsupported by evidence, and therefore the only question for determination on this appeal is whether simple contract creditors of a partnership have such a lien upon the assests of the firm as will enable them to follow and subject such assets, or the proceeds thereof, to the payment of the firm debts after all partners have parted with their interest therein. Upon this question there is some conflict in the adjudged cases, but the great weight of authority favors the doctrine that the firm creditors have no lien in their own right upon the partnership effects, and no direct right to compel their application to firm, in preference to individual, debts. The right to compel such an application of partnership assets is generally regarded as an equity the partners have as between themselves, but, so long as it exists in any of the partners, the creditors may, by a sort of subrogation to the right of the partner, compel its enforcement, and by this means obtain an application of partnership property to their demands. The right of the firm creditor in this respect is, however, a derivative one only, and not held or enforced in his own right; in other words "the equities of the creditors can only be worked out through the equities of the partners." From these premises it necessarily follows that, unless a partner is in condition to enforce such right, the creditors cannot do so. The *quasi* lien, as it is sometimes called, of the creditor, being at best only the resultant of his debtor's lien, it of course can not exist after the debtor has himself ceased to have any lien from which it can be derived. The leading case upon this subject is, perhaps, that of *Case* v.

*Beauregard*, 99 U. S. 119, in which it was held that transfers made by the individual members of an insolvent firm of their interest in the partnership assests terminated the equity of any partner to require the application thereof to the payment of firm debts, and was, therefore, a complete bar to a bill filed by the partnership creditors for that purpose.   But probably no clearer enunciation of the doctrine is to be found than that of Mr. Justice MATTHEWS in *Fitzpatrick* v. *Flannagan*, 106 U. S. 654 (1 Sup. Ct. 374).   He says: "The legal right of a partnership creditor to subject the partnership property to the payment of his debt consists simply in the right to reduce his claim to judgment, and to sell the goods of his debtors on execution.   His right to appropriate the partnership property specifically to the payment of his debt, in equity, in preference to creditors of an individual partner, is derived through the other partner, whose original right it is to have the partnership assets applied to the payment of partnership obligations.   And this equity of the creditor subsists as long as that of the partner, through which it is derived, remains; that is, as long as the partner himself 'retains an interest in the firm assets as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce through it the application of those assets primarily to payment of the debts due them, when ever the property comes under its administration.' Such was the language of this court in *Case* v. *Beauregard*, 99 U. S. 119, in which Mr. Justice STRONG, delivering its opinion, continued as follows: 'It is indispensible, however, to such relief, when the creditors

àre, as in the present case, simple contract creditors, that the partnership property should be within the control of the court, and in the course of administration, brought there by the bankruptcy of the firm, or by an assignment, or by the creation of a trust in some mode.   This is because neither the partners nor the joint creditors have any specific lien, nor is there any trust that can be enforced until the property has passed in *custodiam legis.*'   Hence it follows that 'if, before the interposition of the court is asked, the property has ceased to belong to the partnership, if by a *bona fide* transfer it has become the several property either of one partner or of a third person, the equities of the partners are extinguished, and consequently the derivative equities of the creditors are at an end.' "

And in *Schmidlapp* v. *Currie*, 55 Miss. 600 (30 Am. Rep. 530), the rule is admirably stated by Mr. Justice CHALMERS as follows: "The firm creditors at large of a partnership have no lien on its assets any more than ordinary creditors have upon the property of an individual debtor.   The power of disposition over their property inherent in every partnership is as unlimited as that of an individual, and the *jus disponendi* in the firm, all the members co-operating, can only be controlled by the same considerations that impose a limit upon the acts of an individual owner, namely, that it shall not be used for fraudulent purposes.   So long as the firm exists, therefore, its members must be at liberty to do as they choose with their own, and even in the act of dissolution they may impress upon its assets such character as they please.   The doctrine that firm assets must first be applied to the payment

of firm debts and individual property to individual debts, is only a principle of administration adopted by the courts where from any cause they are called upon to wind up the firm business, and find that the members have made no valid disposition of, or charges upon, its assets. Thus, where, upon a dissolution of the firm by death or bankruptcy, or from any other cause, the courts are called upon to wind up the concern, they adopt and enforce the principle stated; but the principle itself springs alone out of the obligation to do justice between the partners. The only way to accomplish this is to so marshal the assets that property which was owned in common shall be applied to the joint debts, and that which was separately owned shall be applied to the liabilities of its separate owner, so that neither class of creditors shall be allowed to trespass upon the fund belonging to the other until the claims of that other shall have been satisfied. This right of the creditors is, therefore, really the right of their debtors, and inures to them derivatively from the debtors. Hence it is said that the lien or *quasi* lien of the creditor 'is worked out through the partners,' the meaning of which is that the firm creditors may demand the primary application of the firm assets to the payment of their debts, because each one of the partners would have a right to demand this as against his copartners." This doctrine is likewise supported by the following authorities: 2 Bates on Partnership, § 824; Parsons on Partnership, § 246 *et seq.* and note; *Huiskamp* v. *Moline Wagon Company*, 121 U. S. 310 (7 Sup. Ct. 899); *Goldsmith* v. *Eichold*, 94 Ala. 116 (33 Am. St. Rep. 97, 10 So. 80); *Jones* v. *Fletcher*, 42 Ark.

423; *Hawk Eye Woolen Mills* v. *Conklin,* 26 Iowa, 422; and many others which it is not deemed necessary to cite. The courts of New York (*Menagh* v. *Whitwell,* 52 N. Y. 146 (11 Am. Rep. 683), and perhaps those of another state or two, seem to hold to a contrary doctrine, but they are decidedly in the minority, and we are not sufficiently impressed with the soundness of the reasons upon which their decisions are founded to follow them in opposition to what we conceive to be the great weight of authority. Applying the doctrine stated to the case in hand, the solution is clear. It is admitted by the complaint that the entire right and interest of each of the partners in the firm of Osmers & Hughes in the partnership property had been sold and transferred long prior to the commencement of this suit, and that neither of such partners had any interest therein at the time the suit was commenced, and hence, under the rule stated, it cannot be maintained. The decree must therefore be affirmed, and it is so ordered.

AFFIRMED.