Argued March 4, decided April 14, rehearing denied October 6, 1908.

## CALDWELL BANKING & T. CO. v. PORTER.

[95 Pac. 1; 97 Pac. 541.]

GARNISHMENT—PROCEEDINGS—WAIVER OF OBJECTIONS.

1. The failure of plaintiff to appear at the time and place specified in the order requiring the garnishee to appear for examination, is waived by the garnishee subsequently answering and proceeding to trial without objection, and without requesting a ruling on its motion to dismiss.

SAME—PROPERTY SUBJECT TO GARNISHMENT—"PROPERTY."

2. Under Section 300, B. & C. Comp., providing that all "property" of defendant not exempt from execution shall be liable to attachment, the balance a firm has to its credit in a bank is liable to seizure under an attachment in an action against the firm, the word "property" including money and credits.

SAME—NATURE OF PROCEEDING.

3. A proceeding against a garnishee on an attachment or execution issued in an action at law, is strictly at law, and pleadings are framed and the issues of fact arising thereon are tried as in ordinary actions at law.

APPEAL—RULING ON MOTION FOR NONSUIT—REVIEW.

4. The grounds stated in a motion for a nonsuit are conclusive on the moving party, and he cannot raise for the first time on appeal a ground not stated in the trial court.

GARNISHMENT—EFFECT—RIGHTS OF ACTION.

5. A creditor of a firm who, in an action against the firm, attaches money and credits belonging to the firm in possession of another, succeeds to the rights of the firm against the latter.

PARTNERSHIP—DISPOSITION OF FIRM PROPERTY—RIGHTS OF CREDITORS—RIGHTS OF PARTNERS.

6. Simple contract creditors of a firm have no lien in their own right on firm assets which will prevent the partners from, in good faith, applying the same to the payment of the individual debts of the partners, but the partners have a lien on the property for the payment of partnership debts, and one partner cannot appropriate the property to the payment of his individual debts without the consent of the copartners, and such a payment without such consent is a misapplication of the assets of the firm, and a fraud on the rights of the copartners.

SAME.

7. A bank received deposits from a firm. It charged against the firm account the notes of partners, though it knew that the notes were the individual obligations of the partners. *Held*, that the act of the bank was *prima facie* invalid as against the partnership and its creditors, and the burden of

proof was on it to show that it made such charge with the assent, express or implied, of all the partners.

SAME.

8. Evidence *held* not to show that a bank applied firm deposits to the individual obligations of partners with the assent, express or implied, of all the partners essential to make the transaction valid as against the firm and its creditors.

APPEAL AND ERROR—PRESUMPTION—FACTS NECESSARY TO SUSTAIN JUDGMENT.

9. Where the objection to a judgment against a garnishee, on the ground that there was no proof of an action by plaintiff against defendant to support the garnishment proceedings, was not in any way raised below, since the garnishment proceedings could not have been maintained, unless supported by the main action, it will be presumed on appeal that the trial court took judicial notice of the record in such action.

SAME—REVIEW—INVITED ERROR.

10. Where the record in the attachment suit, on which garnishment proceedings were based, was excluded on objection of the garnishee, the latter, having invited the ruling, cannot complain on appeal, even if its exclusion was error.

SAME—PROCEEDINGS NOT IN RECORD—RECORD IN ATTACHMENT SUIT—NECESSITY ON APPEAL BY GARNISHEE.

11. Where, on appeal by a garnishee, the transcript does not contain the record of the attachment suit, on which the garnishment proceedings were based, the conclusion of the trial court as to the validity of the proceedings therein cannot be reviewed.

From Malheur: GEORGE E. DAVIS, Judge.

This is an action by the Caldwell Banking & Trust Company, against F. L. Porter, Thomas Jones and E. H. Test, co-partners, doing business under the firm name of Porter, Jones & Test, defendants, in which action the First National Bank of Ontario was summoned to appear and answer as garnishee. From a directed verdict in favor of plaintiff, and the judgment rendered thereon, the defendant garnishee appeals.

Statement by MR. CHIEF JUSTICE BEAN.

On September 29, 1906, F. L. Porter, Thomas Jones, and E. H. Test, partners in the sheep business in Malheur County, sold their sheep for $22,594.50, and deposited the money in the First National Bank of Ontario to the credit of the firm, which, together with a previous balance of $458.26, made an aggregate credit of $23,-052.76. At that time the partnership was indebted to the bank in the sum of $13,656.04, and it held the indi-

vidual notes of each member of the firm, which were overdue and of about equal amounts, approximating— principal and interest—$7,008.85, which the bank charged to the firm account. This left a balance of $2,035.02' to the credit of the firm. On October 3d plaintiff, Caldwell Banking & Trust Company, commenced an action at law against Porter, Jones & Test to recover on two promissory notes, amounting in the aggregate to $7,500 and accumulated interest, and caused a writ of attachment to be issued and served upon the bank, attaching any and all money or credits in its possession belonging to the partnership. The bank answered that its books showed a balance to the credit of the firm of only $2,035.02. This being unsatisfactory to plaintiff, it obtained an order requiring the bank to appear and answer on oath concerning the same. Written allegations and interrogatories were subsequently served and filed, in which, after alleging the incorporation of plaintiff and garnishee bank, the partnership of Porter, Jones & Test, the commencement of the action by plaintiff against the partnership, the issuance and service of the writ of attachment therein, the return of the garnishee bank, the deposit by Porter, Jones & Test of $22,594.50 with the garnishee bank on September 29, it is averred that after such deposit, and prior to the service of the writ of attachment on the garnishee bank, it had paid out on order of the partnership the sum of $14,008.89, and no more, and that at the date of such service there was due and owing from such bank to the partnership, the sum of $9,043.87. On the day the garnishee bank was requested to appear and answer, it filed a motion to dismiss the proceeding for want of an appearance by plaintiff, but before such motion was disposed of it answered the allegations, denying the material averments thereof, and affirmatively set out the several notes due it from the partnership of Porter, Jones & Test, and from the individual members of such partnership, and

averred that all such notes were given by the parties thereto and accepted by the bank, and the time of payment thereof extended from time to time, and particularly the notes of the individual members of the firm, upon the express agreement and understanding with the makers, individually and collectively, that the sheep and other partnership property of Porter, Jones & Test would be sold and the money received therefor deposited in the garnishee bank to be applied by the bank in payment thereof; that in accordance with such understanding and agreement, Porter, Jones & Test sold the sheep and deposited the proceeds of the sale with the garnishee bank, whereupon the bank duly applied such portion thereof as was necessary to the payment and discharge of all such notes, partnership and individual; that prior to the commencement of the action by plaintiff against Porter, Jones & Test the partnership and the individual members of such firm duly and fully ratified the action of the garnishee bank in applying the proceeds of the sale to the payment of the partnership and individual debts, and received and accepted their notes as paid and discharged in full.

A reply put in issue the new matter alleged in the answer, and upon the issues thus joined, the cause came on for trial before a jury. The defendant garnishee objected to the admission of any evidence, on the ground that plaintiff's remedy is in equity and not at law. This objection was overruled, whereupon plaintiff, to sustain the issues on its part, offered in evidence severally the complaint, summons and proof of service thereof, a demurrer filed by defendants, the affidavit and undertaking for writ of attachment, the writ of attachment and notice of garnishment, together with the sheriff's return thereon, the answer of the garnishee, and the judgment in the action brought by plaintiff against Porter, Jones & Test. But all these papers were excluded by the court on objection of defendant, on the ground

that they were immaterial, irrelevant, and incompetent. The plaintiff then called Mr. Test, one of the members of the firm of Porter, Jones & Test, who identified the two notes upon which the action was brought by plaintiff; but the court, on objection of defendant, refused to admit either of such notes in evidence, on the ground that they were immaterial, irrelevant, and incompetent, and also refused, for a like reason, to permit Test to testify that at the time of the commencement of such action, there was due and owing thereon from the partnership of Porter, Jones & Test to the plaintiff, the principal and interest of each of such notes. Plaintiff then proved by Test that the partnership of Porter, Jones & Test had on deposit with the garnishee bank on September 29th $23,052.76, and that between that date and the service of the garnishee process upon it there had been paid out by the bank on account of the partnership, and by its authority, $14,008.89, and no more, and then rested.

Whereupon the defendant garnishee moved the court for a nonsuit, on the grounds (1) that plaintiff's remedy was in equity, and not at law; (2) that plaintiff had not proved a partnership of Porter, Jones & Test under the firm name of Porter, Jones & Test, but had shown the partnership to be Porter, Test & Jones. This motion was overruled, and defendant garnishee gave evidence which it claims tended to support its defense to the garnishee proceedings, but at the close of the testimony the court, on motion of plaintiff, directed a verdict in favor of plaintiff, from which defendant garnishee appeals.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. William F. Butcher* and *Mr. Albert N. Soliss,* with oral arguments by *Mr. Butcher* and *Mr. Soliss.*

For respondent there was a brief over the names of *Mr. John C. Rice* and *Mr. William H. Brooke,* with oral arguments by *Mr. Rice and Mr. Brooke.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The defendant's motion to dismiss the proceeding and discharge the garnishee from liability because of the failure of plaintiff to appear at the time and place mentioned in the order requiring the garnishee to appear and be examined on oath concerning the matters stated in its answer to the garnishee process, was waived by defendant. It subsequently answered, and proceeded to trial without objection, and without asking or requesting a ruling on the motion.

2. Nor is there any merit in the objection made at the opening of the case to the admission of any testimony because plaintiff's remedy is in equity and not at law. All the property of a defendant not exempt from execution is liable to attachment (Section 300, B. & C. Comp.), and this includes money and credits.

3. If the garnishee bank was indebted to the partnership of Porter, Jones & Test, or that firm had a balance to its credit on the books of the bank, at the time the garnishee process was served, it was liable to seizure under an attachment in the action brought by plaintiff against the firm, and, if the answer of the bank was not satisfactory to plaintiff, it had a right to proceed in the manner provided by statute. A proceeding against a garnishee on an attachment or execution issued in an action at law is in no sense equitable, but strictly at law, and the pleadings are framed and issues of fact arising thereon tried as in ordinary law actions. *Case* v. *Noyes,* 16 Or. 329 (19 Pac. 104); *Smith* v. *Conrad,* 23 Or. 206 (31 Pac. 398).

4. It is contended that defendant's motion for a nonsuit should have been sustained because plaintiff did not prove the commencement of an action by it against Porter, Jones & Test, or the issuance and service of an attachment therein, or the answer of the garnishee to such attachment, or that a judgment had been rendered in favor of plaintiff in such action. Plaintiff offered in

evidence the pleadings and record in the action referred to, which would have furnished the proof suggested, but they were ruled out by the court on an objection of defendant, and it would seem that it ought not be permitted to take advantage of a failure of proof in this respect. The ruling of the court was probably based on the theory, that proceedings against a garnishee are auxiliary to the action in which the attachment was issued, and therefore the court will take judicial knowledge of the proceeding in such action without proof, and there are many authorities which support this view. *State* v. *Bates,* 22 Utah, 65 (61 Pac. 905 :83 Am. St. Rep. 768) ; *Kenosha Stove Co.* v. *Shedd,* 82 Iowa, 540 (48 N. W. 933) ; *Hollenbach* v. *Schnabel,* 101 Cal. 312 (35 Pac. 872: 40 Am. Rep. 57) ; *Flood* v. *Libby,* 38 Wash. 366 (80 Pac. 533: 107 Am. St. Rep. 851) ; *Farrar* v. *Bates,* 55 Tex. 193; *Farrington* v. *Sexton,* 43 Mich. 454 (5 N. W. 654) ; *S. E. Olson Co.* v. *Brady,* 76 Minn. 8 (78 N. W. 864) ; *Morrison* v. *Hilburn & Poole,* 126 Ga. 114 (54 S. E. 938). But whatever the true rule may be in this regard, defendant specified particularly the grounds of its motion for a nonsuit, which do not include the point now made, and it is the law that the grounds stated in such a motion are conclusive upon the moving party, both at trial and in an appellate court, and that he cannot raise for the first time on appeal a ground of nonsuit not stated below. 6 Enc. Pleading & Practice, 879; *Meier* v. *Northern Pac. R. R. Co.,* 51 Or. 69 (93 Pac. 691).

5. It is also claimed that the court erred in directing a verdict in favor of plaintiff at the close of the testimony. This depends upon whether the garnishee bank had the right, as against the partnership of Porter, Jones & Test, to charge to the firm account the notes held by it against the individual members of the firm. Plaintiff, by virtue of the attachment, was subrogated to the rights of the firm against the bank, and is entitled to recover

against it, if the firm could have done so at the time the attachment was served. *Keene* v. *Smith,* 44 Or. 525 (75 Pac. 1065).

6. Simple contract partnership creditors have no lien in their own right upon partnership assets which will prevent the partners, while the property is under their control, from in good faith applying it to the payment of the individual debts of the members of the firm or otherwise disposing of it. *Stahl* v. *Osmers,* 31 Or. 199 (49 Pac. 958) ; *First National Bank of Indianola* v. *Brubaker,* 128 Iowa, 587 (105 N. W. 116: 2 L. R. A. (N. S.) 256: 111 Am. St. Rep. 209) ; *Pepper* v. *Peck,* 17 R. I. 55 (20 Atl. 16) ; *Carver Gin & Machine Co.* v. *Bannon,* 85 Tenn. 712 (4 S. W. 831: 4 Am. Rep. 803) ; *Woodmansie* v. *Holcomb,* 34 Kan. 35 (7 Pac. 603) ; *National Bank of. the Metropolis* v. *Sprague,* 20 N. J. Eq. 13; *Smith* v. *Smith,* 43 Am. Rep. 359, 364, note. But the partners have a lien on such property for the payment of the partnership debts, or for the surplus due each partner, and therefore one partner cannot appropriate the property to the payment of his individual debts without the consent of all the other partners. Such a payment is regarded in law as a misapplication of the assets of the firm and a fraud upon the rights of co-partners, and, if the individual creditor has knowledge of the fact, the property may, according to the weight of authority, although there is some conflict in the decisions, be recovered in an action at law in the name of the firm, or by a creditor succeeding to its rights by attachment or garnishment. *Johnson* v. *Hersey,* 70 Me. 74 (35 Am. Rep. 303) ; *Coote & Jones* v. *Bank of United States,* 3 Cranch, C. C. 95, Fed. Cas. No. 3,204; *Davies* v. *Atkinson,* 7 Am. Rep. 373, 377, note; *Cannon* v. *Lindsey,* 85 Ala. 198 (3 South. 676: 7 Am. Rep. 38) ; *Rogers* v. *Batchelor,* 12 Pet. (U. S.) 221 (9 L. Ed. 1063) ; *Johnson & Pitt* v. *Crichton,* 56 Md. 108; *Davies* v. *Atkinson,* 124 Ill. 474 (16 N. E. 899) ; *Cotzhausen* v. *Judd,*

43 Wis. 213 (28 Am. Rep. 539) ; *Viles* v. *Bangs,* 36 Wis.
131; *Howell & Gibson* v. *Sewing Machine Co.,* 12 Neb.
177 (10 N. W. 700) ; *Brickett* v. *Downs,* 163 Mass. 70
(39 N. E. 776) ; *Locke* v. *Lewis,* 124 Mass. 1 (26 Am.
Rep. 631).

7. It is undisputed that at the time the garnishee
bank charged up to the firm account the notes of the
individual members, it knew the character of the obliga-
tions. Its act was therefore *prima facie* invalid as
against the partnership and its creditors, and the burden
of proof was on the bank to show that it made such
charge with the assent, express or implied, of all the
partners. *Coote & Jones* v. *Bank of United States,* 3
Cranch, C. C. 95, Fed. Cas. No. 3,204; *Willis* v. *Holmes,*
28 Or. 265 (42 Pac. 989).

8. We have read the entire testimony, and do not
find any evidence that all the partners consented or
agreed that the individual debts of the members of the
firm should be paid from the firm assets. There is testi-
mony that each partner, when pressed for payment of
his individual debt, stated that it would be paid when
the sheep belonging to the partnership were sold. But
there is no testimony that any of the partners, except
perhaps Test, agreed or consented to the payment of
the individual notes of his co-partners out of such fund.
Mr. Alexander, president of the bank, and Mr. Kenyon,
cashier, were the two witnesses who testified in regard
to the matter. Kenyon says that when the deposit was
made by Porter, the bank held the partnership notes
amounting to about $14,000, and the individual notes of
the members of the firm amounting to $7,008.85, all of
which were charged to the partnership account, leaving
a balance of $2,035.02, and he (witness) charged off the
individual notes because they were past due, and it was
the understanding with the partners that the bank was
to have its money when the sheep were sold; that the
question of the payment of the individual notes had often

come up for consideration, and Test had at all times assured the bank, that as soon as the sheep were sold it would get its money on them as well as those of the firm; that he had a conversation with Test in July, 1906, and told him the directors were dissatisfied with the amount of indebtedness and wanted security by mortgage on the sheep; that Test would not give the mortgage, but said, "We expect to sell this property in a short time, and when this property is sold, you shall have your money"; that the individual notes had always been regarded by the bank as partnership indebtedness, and interest thereon was from time to time charged to the partnership account, and a statement rendered to the firm; that at one time Test paid the interest on Jones' note by a firm check; that at another time Test asked witness to request Porter to pay his note, as he seemed disinclined to sell the sheep, and that a short time afterwards, witness saw Porter and inquired when he would be able to pay his note, and he said he could not pay it then, but as soon "as we sell the sheep you shall get your money"; that the next day after the notes had been charged off, the president of the bank and witness had a conversation with Test concerning the matter, and Mr. Alexander said to him, "You know that it was the understanding all the time that this indebtedness was to be paid when the sheep were sold," and Test replied, "I have never denied that, but we cannot pay our individual notes until the company's debts are paid," and that he would not consent to paying the individual notes, because it might involve them in a lawsuit; that on the next day after the money had been deposited in the bank by Porter, Test came in and told witness he had better charge up the notes for he (Test) was about to be sued and attached, but no particular notes were mentioned at that time; that on the 1st or 2d of October Jones came into the bank and got his note, "I guess it is paid, and I am entitled to it"; that Porter came in and got

his note after the garnishment had been served, and Test's notes were mailed to him, and none of such notes have ever been returned. Mr. Alexander said that on one occasion he had a conversation with Mr. Test about the Porter notes, and Test told him that they were partners in the sheep business, and when the sheep were sold, the firm would pay the notes from the proceeds of the sale; that he had other conversations with Test about the individual notes, and it was understood that they would be taken care of by the firm and paid when the sheep were sold; that he had a conversation with Jones in May, 1906, in which he expressed a fear that enough would not be. realized from the sheep to pay the partnership and individual notes, and Jones assured him that there would be sufficient for that purpose, and he (witness) told Jones, that if he would get a letter from Test to that effect, the bank would wait, and the payment of Jones' note was extended with that understanding; that it had been the custom of the bank to charge the interest due on the individual notes to the, firm account. This is all the testimony concerning the right of the bank to charge to the firm account the notes of the individual members, and it is clearly insufficient to show that such charge was made with the consent of all the members of the firm. There is no testimony whatever that Porter or Jones agreed or consented that the notes of Test should be paid from the partnership assets, or that either agreed that the note of the other should be so paid. All that can be reasonably claimed from the testimony is that each partner, when pressed for payment of his own note, stated to the bank that it would be paid as soon as the property belonging to the firm could be sold, but this amounts to nothing more than the assurance that each partner would pay his own indebtedness from the surplus due him after the partnership affairs were settled, and not that such assets should be used for the payment of the individual debts of the

members of the firm.   There is no testimony showing a direct promise by either one or more of the partners that the firm would pay or assume the individual debts. The tenor of the whole testimony is that each partner expected, when the sheep were sold, that there would be enough money to pay all the firm debts and leave a balance coming to the respective partners sufficient to pay their individual debts.

We conclude, therefore, that within the settled rule of law the defendant did not make out such a case as will entitle it to charge to the firm account, the individual notes of the members of the firm, and that the court below was right in directing a verdict in favor of the plaintiff.   The verdict in this case was returned on the 1st day of May, 1907, but the judgment entry, which was made on the 4th, recites that it is based on a verdict returned on the 2d, but this was manifestly a clearly clerical error which could affect no substantial right of the defendant, or is no ground for a reversal of the judgment.   Finding no error in the record, the judgment is affirmed.                           Affirmed.

Mr. Commissioner King, having been of counsel in the court below, took no part in this decision.

---

Decided October 6, 1908.

## On Petition for Rehearing.

[97 Pac. 541.]

Opinion by Mr. Chief Justice Bean.

9. Defendant garnishee stoutly insists that the court erred in directing a verdict against it, for the reason that there was no proof, on the trial, that plaintiff had commenced an action against Porter, Jones & Test, or that a writ of attachment had issued in such action and been served upon it.   In a separate defense, set up in its answer to plaintiff's allegations, defendant avers that the right, claimed by it, to set off the notes of the indi-

vidual members of the firm of Porter, Jones & Test against the amount due from it to the firm was exercised, and such notes canceled and delivered to the makers, and payment thereof duly ratified by them, "prior to the date of the service of the notice of garnishment on said bank, and prior to the commencement of the said action by the plaintiff against said firm, as mentioned and set out in plaintiff's allegations," which would probably be considered, after verdict, as an admission that such action had been commenced and a writ of attachment duly issued and served.

However that may be, the record is, as noted in the original opinion, that plaintiff on the trial made formal offer of the proceedings and record in the main action, but upon defendant's objection the court declined to admit them in evidence. The trial, however, proceeded, and at the close of plaintiff's testimony defendant moved for a nonsuit, on grounds not necessary to state here, but not including a failure of proof in the particular mentioned. The motion was overruled, and defendant then gave evidence tending to support the averments of its answer, and at the close of all the testimony the court, on motion of plaintiff, directed a verdict in its favor, for the reason that defendant had failed to show any authority from the partnership of Porter, Jones & Test to pay or apply the funds of the firm to the individual indebtedness of its members. To this ruling defendant excepted, and from the judgment rendered on the verdict it appeals, bringing up only the transcript in the garnishee proceedings, and no part of the record in the main action. It now insists that the verdict and judgment for plaintiff cannot stand, because there was no proof of an action by plaintiff against Porter, Jones & Test to support the proceedings against it as garnishee. No such question or objection was made in the court below, but defendant permitted the action to proceed to final determination without raising the question, so

far as the record discloses, that such proof had not been made. No motion for nonsuit was made on that ground, nor was the objection taken at any stage of the trial.

There are many authorities, some of which are cited in the original opinion, holding that proceedings against a garnishee are merely auxiliary to the action in which the writ of attachment was issued, and the court will take judicial knowledge of such action and the record therein without proof. And as the proceedings against the defendant could not have been maintained without evidence, within the judicial knowledge of the court or by proof of the main action, we are bound to assume that the court below followed the rule announced in the authorities referred to and held, that it would take judicial notice of the record in such action without proof. Otherwise it would not have permitted the action to proceed against the garnishee or directed a verdict for plaintiff. This view is confirmed by remarks of the court in ruling on the admission of the judgment in evidence.

10. The defendant having, by its objection to the admission in evidence of the record in the main action, thus invited the court to assume the attitude suggested, it is precluded from assailing the ruling, even if erroneous.

11. And as appellant does not bring, as a part of the transcript, such record, we are unable to determine whether the conclusion of the court as to the validity of the proceedings therein is sound.

The other questions referred to in the petition for rehearing were all carefully examined, and are fully covered by the opinion heretofore filed.

Petition for rehearing denied.

AFFIRMED: REHEARING DENIED.