THE FIRST NATIONAL BANK OF INDIANOLA, IOWA, Appellant, v. C. D. BRUBAKER, D. BRUBAKER and S. I. BRUBAKER, Appellees.

| 128 | 587 |
|-----|-----|
| f142 | 138 |

**Fraudulent conveyances:** PARENT AND CHILD.   The conveyance of
1  property from a son to his parents in satisfaction of an indebtedness, is valid as .against other creditors in the absence of actual fraud.

**Partnership:** DISPOSITION OF ASSETS.   The conveyance of partner-
2  ship property in satisfaction of the debt of an individual partner, when made in good faith, will not be set aside at the suit of a firm creditor, even though the firm or the individual partner were insolvent at the time.

**Division of firm property:** SALE BY ONE PARTNER.   A sale by each
3  partner, acting separately and on his own terms, of his interest in firm property amounts to a division thereof, and the validity of a transfer by either of property received in exchange for his interest is not dependent upon the consent of the other.

*Appeal from Warren District Court.*— HON.  EDMUND
NICHOLS, Judge.

THURSDAY, OCTOBER 19, 1905.

THE opinion states the case.— *Affirmed.*

*Henderson & Henderson,* for appellant.

*O. C. Brown,* for appellees.

WEAVER, J.— On or about March 1, 1902, the defendant C. D. Brubaker and one Alexander entered into partnership as retail merchants. Brubaker had very little capital, and his father and mother, who are co-defendants herein, advanced or loaned to him about $1,800 with which to begin business. In August following the firm property was sold to Nuzom Bros. For some reason not clearly indicated, the partners did not unite in the deal with the purchasers, but conducted separate negotiations; Alexander selling his half or partnership interest to one of the Nuzoms, and Brubaker selling his interest to the other, each making such terms and receiving his pay in such money or property as was satisfactory to himself. In making this deal, C. D. Brubaker was assisted by his father, and the transaction took the form of an exchange of properties; the Brubakers transferring to Nuzom the half interest in the partnership property, together with a house and lot owned by the elder Brubaker and occupied by him as a homestead, in consideration of which Nuzom undertook to give title to the other party to a 40-acre tract of land owned by him in that vicinity, transfer a small stock of goods then held in a neighboring town, and to pay in addition to the property here mentioned the sum of $665 in money. In closing this exchange, the cash payment and the conveyance of the land were, with the consent or at the direction of C. D. Brubaker, made to his parents in alleged payment of the loan made to him when he entered business.

The tracts of real estate entering into the exchange were both incumbered by mortgage, and the parents are not shown to have received from the transactions money or property materially in excess of the debt due them from their son.

The small stock of goods referred to was subsequently levied upon and sold for the benefit of the plaintiff herein as a creditor of the firm of Alexander & Brubaker. When the firm went out of business, it was indebted to the plaintiff in a considerable sum and had outstanding obligations, most or all of which were taken up by said bank or paid by checks drawn upon it by said Alexander for the firm, thus accumulating an overdraft. Suit was afterward brought upon the indebtedness thus incurred and judgment obtained, on which, after allowing all proper credits, there is still an unpaid balance of several hundred dollars. C. D. Brubaker proving to be insolvent, this action was brought in equity to subject the 40-acre tract, above mentioned as having been conveyed to the parents, to the payment of the plaintiff's judgment. The theory of the plaintiff is that C. D. Brubaker's interest in the partnership property and business was first liable to the payment of partnership debts, and that the transfer or payment to D. Brubaker and S. I. Brubaker of a part of the proceeds of the sale of said property was fraudulent. The trial court after hearing all the evidence found for the defendants and dismissed the plaintiff's bill, and from this judgment the plaintiff appeals. In our view the right of the plaintiff to the relief demanded rests wholly upon the question whether the allegation of fraud is fairly established by the record. A careful reading of the testimony leads us to agree with the conclusion reached by the trial court.

I. There is nothing shown which would justify us in saying that the parents of C. D. Brubaker, in receiving the money and property in payment of their debt, were actuated by any purpose to hinder or delay, or to assist their son in hindering or delaying, the partnership creditors in the collection of their claims. It may well be that they were dissatisfied with the outlook for the success of their son in the partnership business, and were anxious to avoid loss by having him pay or secure the debt due to them. That a creditor may lawfully receive pay or

1. FRAUDULENT CONVEYANCES: parent and child.

take security from his debtor, even though he knows or ought to know that the result of such transaction will be to delay or defeat other creditors, is well settled. *Carson v. Byers,* 67 Iowa, 606; *Stroff v. Swafford,* 81 Iowa, 699; *Aulman v. Aulman,* 71 Iowa, 124. If, however, the creditor colludes with the debtor and takes the property of the latter for the purpose of hindering or delaying, or assisting him in delaying or defrauding his creditors, then, of course, it is an elementary proposition of equity that the fraudulent sale will be set aside. In the instant case there is no attempt to show that the judgment defendant was not in fact indebted to his father and mother in the full amount claimed or that the property transferred in payment of the debt was in excess of the sum justly due to them. It is true that transactions of this nature between members of the same family one of whom is insolvent or in failing circumstances will be closely scrutinized, and, if the taint of fraud be found or is fairly to be inferred, they will not be upheld. The right of a person to receive pay or security from a debtor is in no manner lessened or restricted because the debtor is a relative or member of his family. The fact of relationship is a material matter, to be considered upon the question of good faith of the person receiving the property; but, if no fraud in fact be found, neither law nor equity discriminates against him. We are satisfied that the parents of the judgment defendant took the conveyance of the land for the honest purpose of securing their own claim, and not for the purpose of defrauding or delaying the other creditors of their son.

II. The proposition most insisted upon by the appellant is that the partnership property and assets are first liable for the payment of partnership debts, and that the use of

**2. Partnership:** disposition of assets.

such property or assets by a partner for the payment of his individual debt is fraudulent as a matter of law, and that the creditor of the individual partner, receiving payment in such manner, may be required to account for the money or property so obtained.

Stated in counsel's own words, the claim is that "a creditor of one member of a firm who takes partnership property or the proceeds thereof in payment of his individual debt, knowing that the property is partnership property, must account for the same or its value to a creditor of the partnership." In our judgment this position is not tenable. Notwithstanding the somewhat ill-considered language found in a few decisions, it is not true, in this State at least, that the creditors of a firm have some sort of a lien on partnership property or that payment of the debt of an individual partner from the partnership assets, even though made without actual bad faith, will be set aside as fraudulent at the suit of a partnership creditor. It may be conceded that, when a court of equity has acquired jurisdiction of a partnership for the purpose of winding up its business, partnership property will be applied to the payment of partnership debts, and creditors of the individual partners can reach only the surplus which may remain after partnership creditors have been paid in full; but, until equity does obtain jurisdiction, the right to insist that partnership property shall be applied primarily to the discharge of partnership debts is one belonging solely to the several partners themselves, and is not available to the creditors of the firm. *Poole v. Seney,* 66 Iowa, 502; *Smith v. Smith,* 87 Iowa, 93; *Hawk Eye v. Conklin,* 26 Iowa, 422; *Maquoketa v. Willey,* 35 Iowa, 330; *George v. Wamsley,* 64 Iowa, 178; *Sylvester v. Henrich,* 93 Iowa, 489; *Johnston v. Robuck,* 104 Iowa, 523.

Nor, under our holdings, does the fact that the firm or an individual member of the firm is insolvent give rise to any different rule, so long as the payment or security of the individual debt is taken in good faith. This rule is not recognized by all courts, but we have repeatedly affirmed it, and believe it in accord with sound principle and the weight of authority. In the Smith Case, *supra,* the partnership and both of its individual members were insolvent, yet a mortgage of the firm property to secure an antecedent debt to the

father of the partners was upheld against the creditors of the firm; it appearing from the evidence that the father's claim was just, and that he acted in good faith in taking the security. This decision was arrived at after two hearings and very thorough argument by counsel, and no persuasive reason is now advanced why we should depart from it.

Counsel say, however, that the application of the rule affirmed in that case depends upon the consent of all the partners to the payment of the individual indebtedness from the assets of the firm, and that in the case at bar Alexander did not consent to the act of C. D. Brubaker in causing the land to be deeded to his father. Conceding the law to be as stated, it does not appear to be applicable to this case. In the proper sense of the word, the property conveyed by Nuzom to D. Brubaker constituted no part of the assets of the firm. It is elementary that partners may during the partnership convert joint or partnership property into separate property or separate into joint, and the property will on dissolution be held to possess that character which is thus impressed upon it. Bissett on Partnership, 198–111. Gow on Partnership, 296. Story on Partnership, 527. *Maquoketa v. Willey,* 35 Iowa, 323. See, also, cases 22 Am. & Eng. Ency. of Law (2d Ed.) p. 188, note 5. One partner may purchase the interest of all his copartners in firm property, and thereafter the creditors of the firm can claim no preference over the individual creditors of the purchaser in the application of the property to the payment of debts. *Carver v. Bannon* (Tenn.), 4 Am. St. Rep. 803; *Ladd v. Griswold,* 4 Gilman, 25 (46 Am. Dec. 443); *Hapgood v. Connell,* 48 Ill. 64 (95 Am. Dec. 516); *Dimon v. Hazard,* 32 N. Y. 65.

*3. Division of firm property: sale by one partner.*

It is not denied that by mutual consent, or at least without protest or objection on part of either Brubaker or Alexander, these partners, acting separately and individually, sold their several shares or interest in the firm property to different purchasers; each fixing his own price and making his own

terms of sale.    There is no suggestion that either partner
ever claimed or asserted any right or interest in the proceeds
of the sale made by the other, or attempted to exercise any
dominion or control over it as partnership property.    These
circumstances, construed in the light of the subsequent con-
duct of all parties concerned, afford ample ground for hold-
ing that by the consent of the parties their interests in the
joint property were disunited, and that each held the proceeds
of his individual sale as his separate and individual prop-
erty.    Such being the case, the consent of Alexander to the
conveyance of the land by Nuzom to D. Brubaker in payment
of the debt due from C. D. Brubaker was not essential to the
validity of the transaction.    In his testimony given on the
trial in the court below Alexander denies that he knew of the
conveyance of the land to D. Brubaker, but does not claim
there was any promise or agreement with his partner by
which the property and money received upon the sale of their
respective shares was to be held and treated as partnership
assets.    On the contrary, his conduct with reference to the
sale, as well as his testimony on the witness stand, is explain-
able only on the theory that he, as well as C. D. Brubaker,
regarded their rights and interests in the partnership prop-
erty as severed and the proceeds of several sales as the
individual property of the partners.    The right to insist that
partnership property be retained and applied first to partner-
ship debts is, under the rule of our cases already cited, a right
to be asserted by the partner, and not by creditors.    What-
ever equities to this end the creditors may have are dependent
upon the equities between the partners and must be worked
out through them.    *Kimball v. Thompson,* 13 Metc. 283;
*Allen v. Center Valley Co.,* 21 Conn. 130 (54 Am. Dec.
333); *Ladd v. Griswold,* supra; *Coover's Appeal,* 29 Pa. 9
(70 Am. Dec. 149).

Alexander is not a party to this proceeding, and, if he
were, the showing made excludes the idea that he has any

equitable right to have the property in controversy subjected to the payment of the plaintiff's judgment.

For the reasons stated, the decree appealed from is *affirmed.*