E. L. HOSTETER, Appellee, v. WEAR-U-WELL SHOE COMPANY, Appellant.

PRINCIPAL AND AGENT: Ostensible Authority of Agent—Facts
1  Not Showing. An agent has "ostensible authority" to do a certain act in the name of his principal when the conduct of the principal is such as to induce a third person to believe, in good faith, that the agent has been given authority to do such act. *Held,* such authority was not shown.

PRINCIPLE APPLIED: One Waters, as agent, had authority to enter into contracts with different people to sell on commission the goods of his principal. Neither he nor the person selling on commission had authority to bind the principal by a lease. Waters had authority simply to enter into the commission contracts and determine on the suitableness of the location of the store building, the seller on commission being required to pay his own rent. Waters entered into a contract with Foster. Foster leased the building and signed the lease individually, and in the name of the principal. The landlord had no knowledge as to the agency powers or authority of Waters or Foster. *Held,* this condition furnished no sufficient basis to claim that either Waters or Foster had ostensible authority to bind the principal by a lease.

PRINCIPAL AND AGENT: Authorized Act of Agent—Ratification.
2  Ratification is the confirmation of a voidable act. One who knows that an unauthorized contract has been made in his name must promptly repudiate. Accepting the benefits of such unauthorized

contract will work a ratification. *Held,* ratification sufficiently shown.

**CORPORATIONS:  Agents—Unauthorized Acts—Power of President 3  to Ratify—Presumption.**  An officer of a corporation having authority to authorize the doing of a certain act may ratify such act when done without his authority, and a presumption prevails that the acts of the president of the corporation arising in the ordinary course of its business are authorized by the directing officers.

PRINCIPLE APPLIED:  The president of an incorporated shoe company had general supervision of the establishment of agencies for the sale of the goods of the corporation.  A lease of a store building was, without authority, signed in the name of his company.  Later, knowledge of the unauthorized signing was brought to the president.  He did not repudiate such act, but allowed the goods of the company to remain in the building for about a year after acquiring such knowledge.  *Held,* it was sufficiently shown that the president had authority to ratify the unauthorized signing of the lease.

**CONTRACTS:  Misdescription of Parties—Contemporaneous, Mutual 4  Construction.**  The manner in which parties to a contract have mutually treated and regarded misdescriptions of the parties therein is very persuasive with the court.

PRINCIPLE APPLIED:  A lease described the lessee as the "Wear-U-Well Shoe Company of Columbus, Ohio, with headquarters in Minneapolis, Minn."  It was signed in the name of "Wear-U-Well Shoe Company."  There was a company by the latter name at Columbus, Ohio, but it had nothing whatever to do with the lease in question.  During the life of the lease, the defendant in this action never raised the question that it was not the party intended by the lease.  Such defense was only suggested after suit brought.  *Held* that the misdescription should be treated as surplusage.

*Appeal from Black Hawk District Court.*—HON. FRANKLIN C. PLATT, Judge.

SATURDAY, APRIL 10, 1915.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1915.

ACTION for rent resulted in judgment as prayed.    The defendant appeals.—*Affirmed.*

*Reed & Tuthill,* for appellee.

*Sager, Sweet & Edwards,* for appellant.

LADD, J.—On June 26, 1912, the plaintiff executed a lease of a storeroom owned by him in Waterloo for a term of 32 months beginning August 1st of that year, at a rental of $50 per month.    The lease recited that it was entered into by and between the plaintiff, as party, of the first part, and "Wear-U-Well Shoe Company of Columbus, Ohio, with northwestern headquarters in Minneapolis, Minn., and F. H. Foster, local manager and agent for above Wear-U-Well Shoe Co. of the second part."    This lease was signed "Wear-U-Well Shoe Co. by F. H. Foster, Mgr. & Agt."    Foster also signed it individually.    Though there was a company of the same name located at Columbus, Ohio, it had nothing directly or indirectly to do with the lease or its execution.    The defendant is a corporation, bearing the name Wear-U-Well Shoe Company, of Minneapolis, Minn., and, during the time in question, was engaged in the business of selling shoes through branch agencies.    It began business in April, 1912, operating under two plans: one by renting a storeroom, installing a stock of goods and selling through salesmen employed by it; and the other, by selecting a suitable location and employing an agent to sell the shoes on commission, he to "furnish room for said merchandise and give bond for the faithful discharge of his duties."    At the time the lease was executed, the defendant had abandoned the plan first mentioned and entered into the contract with Foster, under the terms of which he was to receive 15 per cent. of the proceeds of shoes of one class and 12 per cent of the proceeds of shoes of another class, and to pay the rent for the storeroom.    Endorsed on the contract were the words: "Freight charges on first shipment and store completely built

to be paid by parties of first part, G. T. W. Jr." One Geo. T. Waters acted for defendant in selecting plaintiff's store-room as a suitable place at which to conduct the business, and for it entered into the contract with Foster under which the store was operated for several months. It was put in repair by plaintiff and occupied for the sale of defendant's shoes until August 30, 1913, when the stock was removed and this action to recover the rent for the month following begun.

Plaintiff made all reasonable efforts to rent to another but failed. The issues raised by the evidence are: (1) Whether Waters had ostensible authority to contract for the lease in defendant's behalf; (2) whether the defendant subsequently ratified the execution thereof; and (3) whether it was a lease to defendant.

I. The evidence that Waters, as well as Foster, was without actual authority to execute the lease is undisputed. Did he have ostensible authority—that is, was defendant's conduct such as to induce plaintiff to rely on the existence of authority on Waters' part to represent defendant in executing the lease? If the company held Waters out as having such authority or knowingly permitted him to so assume, then it must be held responsible; for to allow the principal to dispute the authority of the agent in such a case would enable him to commit a fraud on innocent persons dealing with him in reliance thereon. Whether there was such apparent authority, then, is to be determined not from the acts of the agent but from those of the principal. All defendant had done was to authorize Waters to enter into contracts with persons to handle defendant's goods on commission, and select a storeroom or suitable location to be furnished by such person at which he should carry on the business. Nothing else was done by defendant prior to the execution of the lease and even this much was not known to the plaintiff, for he was not advised that the local manager

1. PRINCIPAL AND AGENT: ostensible authority of agent: facts not showing.

was required to furnish the room or pay the rent. Manifestly, then, defendant was not guilty of clothing its agent with an apparent authority which was not accorded him, and there is no ground for saying that Waters had apparent authority to execute the lease.

II. The defendant advanced the first month's rent by sending in its check therefor payable to its local manager, Foster, and he endorsed it over to plaintiff. Thereafter, the rent was paid at the store. Goods consisting

2. PRINCIPAL AND AGENT: unauthorized act of agent: ratification. of shoes, rubbers, findings and fixtures were furnished by defendant and placed in the room for sale, with Foster as manager. He continued as such until September 30, 1912, at which time he was relieved and C. O. Barnes installed in his stead. In arranging this change, F. T. Dexter, the president of the defendant company, and Waters were at Waterloo, when the former's attention was directed to the lease and the manner of its execution. With reference thereto, he testified:

"Was quite surprised at its having been signed with our company name and told him he had no authority to sign our name to lease, and that he was the only one they were holding on it, and in making transfer from Foster to Barnes I told Foster that he would have to see Hosteter and arrange with him for subleasing to Barnes, and make his terms on the lease, as we weren't on the lease. Barnes succeeded Foster. Wear-U-Well Company entered into a written contract with Barnes. I believe I made that contract for the company. . . . Told Foster he was liable on lease. Told him to see Hosteter and arrange for transfer of lease to new man, Barnes, and that he himself was liable. Don't know whether he did this."

Foster testified:

"Don't remember whether I said anything about having signed, think we didn't. He (Dexter) looked the lease

over, my recollection is he said something to Waters, wanting to know why the lease was made out in that way. Don't remember the exact conversation. Waters said something about that was the only way they could get the room or something to that effect. They talked about the lease, I presume they were talking about it, but don't know whether they were or not. They talked some and looked over lease. Talked something about it, don't know what. They finally got Barnes to take the store.''

Neither Foster nor anyone else advised plaintiff that defendant's name was attached to the lease without its authority, and with this knowledge on Dexter's part, together with that of the fact that plaintiff had refused to lease to other than the owner of the stock to be installed, he, in behalf of the defendant, entered into a contract with Barnes like that with Foster, and the occupancy of the premises by its goods was continued under the same lease. Barnes was succeeded by W. J. Roth, under a like contract, November 4, 1912, and the latter by Wm. Tiep, June 5, 1913. The goods of the company continued on the premises in charge of its sales agents for nearly a year after it acquired knowledge through its president of the execution of the lease by its agent, and by accepting the advantages of said lease, it ratified the act of its agent in attaching its name thereto. Had it repudiated such act promptly by notifying plaintiff that it would not be bound thereby, or had it ceased to occupy the room with its goods, it must have been relieved of all liability. As contended by appellant, knowledge of all the material facts connected with the making of the lease was essential to an effective ratification. *Haswell v. Strandring,* 152 Iowa 291.

As seen, such knowledge was obtained by the company through its president. Was this while he was acting within the scope of his duties? He testified that Waters was an ''installing agent. We sent him out to secure agents for

us and to arrange with them to handle our goods. He was the one to judge the location and determine whether the location was satisfactory. He looked up agent's financial standing. I gave him list of towns. Waters was under my supervision and reported direct to me as president of the company. I passed upon matters he reported to me. Waters would determine in what part of a town an agency would be located. He looked over the ground and store and saw to the installing of stock and so on; he passed on that matter himself. He had full authority to do it. . . . I told him what his duties were. The question of his making leases never came up." The locating of the different stores being under his supervision, the manner of so doing impliedly was subject to his direction; and as he might authorize leasing in the first instance, the power to ratify an unauthorized lease made by an agent was likewise within the scope of his authority. See *Merrick v. Plank Road Co.*, 11 Iowa 74; 1 Clark & Skyle's Agency, Secs. 119, 120.

3. CORPORATIONS: agents: unauthorized acts: power of president to ratify: presumption.

It is elementary that a person or corporation capable of entering into a particular contract in the first place may ratify such contract, if still capable, where it has been entered into by another without authority.

"Any officer or agent of a corporation may give validity to the unauthorized acts of his subordinates, provided they be of a kind which he might have authorized them to perform." Purdy's Beach on Priv. Corp. Sec. 777.

In the latter work, it is said, in Sec. 779:

"*Knowledge,* by the corporation, of all the material facts and terms of the unauthorized contract, is essential to show, in attempt to hold that the corporation impliedly ratified it, but acquiescence implies such knowledge. If a person assuming to act as agent of a corporation, but without legal authority, or an agent in excess of his proper authority, make a contract, and the corporation knowingly receive and retain

the benefit of it, this will be a ratification of the contract and render the corporation liable as a party to it. The rule does not apply unless the corporation itself received the money or property, or appropriated it under corporate agency."

There was no direct evidence bearing on the authority of the president, save as recited above, which disclosed that he was in the active management of the affairs of the company in establishing branch stores, and that, in pursuance of the arrangements of its agent, Waters, under his supervision, stocks were placed and the business carried on by the company. This, in connection with the presumption that the acts of the president of a corporation arising in the ordinary course of its business are authorized by the directing officers, was quite enough to warrant the conclusion of the trial court that Dexter, as president of the defendant corporation, was endowed with power to lease the premises originally or to ratify the leasing thereof by Waters and Foster. See *White v. The Elgin Creamery Co.,* 108 Iowa 522; *Ney v. Eastern Iowa Tel. Co.,* 162 Iowa 525.

III. But counsel for appellant urge that the lease did not purport to be that of defendant. The name designated in the first paragraph of such instrument is precisely the

4. CONTRACTS: misdescription of parties: contemporaneous, mutual construction.

same as that attached thereto, save that it is described as "of Columbus, Ohio, with northwestern headquarters in Minneapolis." That this was a mere mistake of location appears from the recital following: "And F. H. Foster, local manager and agent for above Wear-U-Well Shoe Co." He had been appointed such manager for defendant. Moreover, Dexter, as president, when shown the lease, raised no objection on this ground, merely suggesting that the defendant's name had been signed thereto without authority. In these circumstances, the matter of location of the company was rightly treated as surplusage and the defendant, as its name

had been signed to the lease, regarded as the lessee intended. *Montanye v. Wallahan,* 84 Ill. 355. See *Schulte v. Schering,* 26 Pac. (Wash.) 78. With full knowledge of its terms and that plaintiff understood it to be occupying the premises as tenant, the defendant proceeded as though it was such, in so far as plaintiff was advised, and having acquiesced in the assumed authority of Waters and Foster in negotiating and executing the lease in its name and having received the benefits accruing therefrom, it cannot be heard to deny the obligation of the instrument so fully ratified, and the court rightly directed the jury to return a verdict for plaintiff. Some rulings on the admissibility of the evidence are complained of, but these were either correct or such that, had they been different, the same conclusion must have been reached.— *Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.