PEABODY BUGGY COMPANY et al., Appellees, v. COOPER & COLLINS et al., Appellees, FIRST NATIONAL BANK OF WOODBINE, Garnishee, Appellant.

**PARTNERSHIP:** Partnership Assets—Diversion by Partner for Private Purpose—Non-Repudiation—Ratification—Garnishment.

The good-faith receipt by a third party of known *partnership* funds, even in unreasonable amounts, in payment of the *individual* debt of one partner, followed by non-repudiation by the remaining partner of such diversion of funds promptly upon learning thereof, and by subsequent ratification thereof by such remaining partner, effectively deprives such partnership of all right to such funds, and, as a necessary consequence, frees the receiver of such funds of all liability therefor in garnishment proceedings against him by a partnership creditor.

GARNISHMENT: Liability of Garnishee—Measure of Liability. 2,5 Principle recognized that the liability of a garnishee is measured strictly by his liability to the principal defendant. So held with reference to a garnishee of a partnership defendant.

CONTRACTS: Validity of Assent—Ratification. Principle recognized that ratification of an unauthorized act is equivalent to original consent. Applied where the act of one partner, in applying partnership funds to the discharge of his own individual debts, was ratified by the remaining partner.

PARTNERSHIP: Partnership Assets—Diversion for Private Purpose—Duty to Repudiate. A partner who knows that partnership funds have been used by his copartner for payment of the latter's individual debts is bound thereby, unless he promptly repudiates such diversion upon learning thereof.

GARNISHMENT: Liability of Garnishee—Measure of Liability. 2,5

*Appeal from Crawford District Court.*—M. E. HUTCHISON, Judge.

JANUARY 9, 1918.

The plaintiff, a corporation, is an execution creditor of Cooper & Collins, a partnership. It levied an execution by garnishment of the First National Bank of Woodbine, as garnishee and as alleged debtor of Cooper & Collins. The issue is between the plaintiff and the garnishee. The garnishee denied indebtedness, and the plaintiff controverted its answer and averred, in substance, that said garnishee

had previously received certain partnership checks signed
by Cooper & Collins, and had fraudulently appropriated the
same to its own use, with intent to defraud such partner-
ship; and that it had so appropriated the checks by apply-
ing the same in payment of the individual indebtedness of
one of the partners. Six checks were involved, representing
a total of $1,512. The trial court held that such checks were
properly applied, to the extent of $784. As to the remainder,
the issue was submitted to the jury, which rendered a ver-
dict for the plaintiff for $748. Judgment was entered ac-
cordingly, and both plaintiff and the garnishee have ap-
pealed. *Affirmed on plaintiff's appeal; reversed and re-
manded on garnishee's appeal.*

*Roadifer & Roadifer,* and *H. L. Robertson,* for appellant.

*Sims & Kuehnle, Crary & Crary,* and *Conner & Powers,*
for appellees.

EVANS, J.—The firm of Cooper & Collins

1. PARTNERSHIP: partnership assets: diversion by partner for private purpose: non-repudiation: ratification: garnishment.

came into being in the fall of 1909. It con-
sisted of two partners, Cooper and Collins.
Its activity covered a period of two or three
years, and consisted of operating a hardware
store at Charter Oak, Iowa. The plaintiff
is one of its judgment creditors. At the
time that it was formed, Collins was debtor to the First
National Bank of Woodbine, garnishee herein, which will
hereinafter be referred to as the bank. On or about Jan-
uary 1, 1910, this individual indebtedness of Collins was
represented by a note of $1,000, a note of $526, and a note
of $721. On the first of these, and perhaps on the second,
Cooper was a signer. From time to time, partial payments
were made on these notes, and renewal notes executed for the
balance. Eventually, Cooper became a signer on all the
unpaid notes. Six partial payments were made by Collins
with partnership checks, purporting to be drawn by the

partnership upon its account at the local bank in Charter Oak. The principal amounts were represented by three checks, as follows: one for $529, dated January 6, 1910; one for $521, dated May 2, 1910; one for $380, dated November 7, 1910. The pleading of the plaintiff is that these checks were so used without the knowledge or consent of Cooper, and that such use thereof was fraudulent, and that the garnishee received and applied the same with fraudulent intent, and that the action of Collins and the bank was, therefore, wholly void, and that the bank should be deemed as holding the proceeds of the checks as the property of the firm. The contention in argument, however, is that the action of Collins and the garnishee bank was, as a matter of law, necessarily fraudulent and, therefore, absolutely void, and that the bank is absolutely liable to the partnership as such for the proceeds of such checks. This argument is predicat-ed upon the theory that the indebtedness was the individual indebtedness of Collins, notwithstanding that Cooper was a surety on some or all of the notes.

The contention for the garnishee is that the checks were thus used by Collins with the express consent of Cooper. This contention being denied by Cooper as a witness, the further contention of the garnishee is that, with full knowl-edge of the use of the checks, Cooper did indisputably, by his conduct, repeatedly acquiesce in and ratify such use of the checks. This latter contention presents the decisive ques-tion in the case.

As an abstract proposition, it is true that one partner cannot divert the assets of the partnership to the payment of his own individual obligations, without the consent of his copartners. If he assumes to do so, his act may be repudiated by any other partner, and the money or other asset thus misappropriated may be recovered by the partner-ship from the recipient thereof. In considering such ques-tion, however, the practical fact must not be overlooked that commonly partners do individually draw daily upon the

resources of the partnership, and that such an act is not necessarily a misappropriation of partnership funds, even though no *express verbal* consent of other partners can be shown.  The fact of consent may appear quite conclusively in the course of conduct and methods of business of the partners as between themselves.  Not infrequently, the formation of a partnership absorbs all the resources of the partners.  In such case, it may become necessary for each partner to draw, to some extent, upon the resources of the partnership for his individual current uses.  If, pursuant to such mutual practice, one partner should, in good faith, draw a partnership check for a reasonable amount for his own use, without the actual or express knowledge and verbal consent of his partner, and should deliver it to a third party for his own benefit, the mere absence of express knowledge and verbal consent to the particular transaction by the other partner could hardly avail in repudiation of such transaction.  The consent *could* be found in the mutual conduct of the partners.

2. GARNISHMENT: liability of garnishee: measure of liability.  Though the contending parties before us are creditors, the one a partnership creditor, and the other an individual creditor of a partner, this is not a creditors' contest. Though the plaintiff is a partnership creditor, it has no preference of claim, as such, over that of the garnishee.  *First Nat. Bank of Indianola v. Brubaker*, 128 Iowa 587.  It stands in the shoes of the partnership only. If the act of Collins can be deemed fraudulent, either actually or constructively, it is because it was so as to the other partner, and therefore as to the partnership.  It cannot be said to be fraudulent as against the creditors of the partnership.  The plaintiff is in court as a garnisher, and its right can rise no higher than that of the debtor firm, Cooper & Collins.

With these general observations, we turn to the im-

portant details of the concrete case. The formation of this partnership was quite informal. Prior to its formation, Cooper and Collins had been jointly interested, for some months or years, in various transactions. One of such transactions was the purchase by contract of a tract of Texas land. They traded such contract for the stock of hardware already referred to, the same being situated in the town of Charter Oak. We infer from the record that they purchased a going business, and that they kept it going as such after the purchase. This business was kept going under the name of Cooper & Collins, and this constituted the formation of the partnership. No particular sum was specified as partnership capital, nor was there any setting apart in advance for partnership uses any particular amount of capital. On the trial, Cooper testified on behalf of the plaintiff, and Collins on behalf of the defendant. Neither witness was able to state the exact sum either partner contributed to the partnership business. It does appear from the testimony that Collins had invested approximately $600 in the Texas contract, and Cooper had invested $200 therein, and that each of them had contributed thereafter about $700 to the partnership business. They also borrowed from the Charter Oak bank the sum of $1,600 for the partnership. The stock invoiced from $4,000 to $5,000. It appears, also, that they jointly owned a farm of 145 acres in Harrison County. They used this farm as the basis of their partnership credit in the Charter Oak bank. When they closed out their partnership business, they had drawn on their credit at such bank a net sum of over $8,000, to the payment of which they devoted the 145-acre farm. There was no clear line of demarcation between partnership and individual property. Both partners appear to have devoted all their individual resources to the support of the credit of the partnership. On the other hand, each partner drew on the resources of the partnership for his

individual use. This is undisputed. We infer from the record that each partner properly charged himself with all the amounts so used by him,—at least, no complaint appears in the record in that regard. This mutual course of conduct of the two partners being conceded, partnership checks drawn pursuant thereto for the individual use of a partner were not presumptively fraudulent. *George v. Wamsley*, 64 Iowa 175. Let it be conceded, even then, that a check in a given case might be repudiated as for actual fraud, or even for excess of authority, yet in such case the burden of repudiation and proof of fraud must rest upon the complaining partner. In *Pierce v. Caldwell*, 179 Iowa 868, we said:

"The use of partnership funds by a partner for his private use is not necessarily a misappropriation. If his interest in the partnership is such that the amount thus taken in good faith can be charged to his account, without prejudice to his partners or to the creditors of the firm, no wrong is perpetrated."

The course of conduct adopted by the partners amounted to a consent by and to each partner to thus use the partnership resources, at least to some extent, and to a reasonable amount. While it might be claimed that, in the case at bar, it was a fair question for the jury whether Collins exceeded the reasonable limits of the use of partnership resources, yet, as we shall presently see, this is not the controlling question in the case. Cooper knew of the use of the checks in question in 1910, immediately after the events. As already indicated, they had been used as payment upon notes some of which, at least, were signed by him, whether as maker or surety is not material for our present discussion. There is no evidence of any bad faith on the part of the garnishee bank, nor of any on the part of Collins, unless it be constructive. Granted even that Cooper was not bound to accept the benefits accruing to

him by his release as surety to the extent of the payment, and that he was entitled to repudiate the transaction, as being either fraudulent or in excess of authority on the part of Collins, yet he did not do so. If the garnishee bank had been a mere bailee or depositary of these funds, and had of its own volition applied them as a credit on these notes, quite a different question would be presented. In such a case, if the application was wrongful, the contract of deposit or bailment would continue in force unsatisfied. But the garnishee bank did not receive these checks as deposits. It received them from Collins as payments on the notes in question. The transaction between it and Collins was contractual, and was binding upon the bank until repudiated. *Evans v. Evans & Co.,* 82 Iowa 492. Cooper was a beneficiary of the contract. If it had been repudiated, the bank would have been entitled to a restoration of the *status quo*. It had gained no advantage in the transaction which it could not have had by the provisional remedies of the statute. It could have seized Collins' individual property, including his interest in the partnership. It could have done likewise as to Cooper's interest therein. Collins had authority to use partnership funds for his own use, at least to some extent. Under the undisputed facts already stated, therefore, we are clear that the burden of disaffirmance or repudiation of the transaction with the garnishee bank rested upon Cooper as soon as he knew thereof. Until he did repudiate, the credits upon the notes were binding upon the garnishee. The transaction, though voidable, was not utterly void. Inasmuch as Cooper never did repudiate the transaction, there was nothing in the hands of the garnishee subject to plaintiff's garnishment when it was effected. No right of repudiation or disaffirmance rested with the plaintiff as a partnership creditor.

**3. CONTRACTS:**
**validity of**
**assent: rati-**
**fication.**

Not only was there an absence of repudiation, but subsequent affirmative ratification appears without contradiction.

In April, 1911, a settlement was had with the bank, of the balances due on different notes. Both Cooper and Collins participated therein. In such settlement, credits were recognized for all the checks in this controversy. A balance of $950 was found to be due to the bank. The notes were executed therefor, and all of these were signed by Collins, Cooper, Mattox, and Chambers. In November, 1911, a further settlement of balances was had. There was due the bank, at that time, a balance of $800. Two notes were executed for this amount, both of which were signed by the same signers.

In 1912, Cooper wrote a letter to the bank, explaining his inability to make any payment on the November notes of $800. In this letter he said:

"I have helped him (Collins) pay you $2,600 already, and he owes me $2,000 of it yet,—nearly busted me up."

He testified at the trial that the $2,600 stated in this letter included the checks now in controversy.

If Cooper gave no advance consent to the use of the checks in question, it was still competent for him to give his consent afterward. It matters not whether such be called a consent or a ratification. *Clews v. Jamieson,* 182 U. S. 461; *Argus v. Ware & Leland,* 155 Iowa 583; *Hosteter v. Wear-U-Well Shoe Co.,* 171 Iowa 346. When the bank, at the settlement of April, 1911, surrendered the notes which it held against both Collins and Cooper, and accepted renewal notes for lesser amounts by reason of the credits of the amounts of these checks, this was an adoption and acceptance of the credits by Cooper, as well as by Collins. It amounted, therefore, to an affirmance or ratification of the transaction, and not to a repudiation of it. The same thing must be said concerning the settlement of November, 1911. Likewise, the letter of April, 1912, quoted above, was a ver-

bal declaration to the same effect. These consenting and ratifying facts are undisputed. Cooper testified, however, as follows:

"I am not nor have I ever been willing that the First National Bank of Woodbine should retain the proceeds of those checks."

Such testimony makes no denial of the ratifying facts above set forth. Though it be true that he was not willing, he could, nevertheless, consent and ratify. He does not claim that he ever manifested or communicated his unwillingness in any way to the garnishee bank. It follows, therefore, that (1) there was no repudiation by Cooper, and (2) there was undeniable ratification.

4. Partnership: partnership assets: diversion for private purpose: duty to repudiate.

It further follows that, at the time of the garnishment (February, 1913), a suit could not have been maintained against the garnishee bank by Cooper, either in his own name or in the name of the firm. A contrary holding would work a continuing fraud upon innocent third parties. Partners might follow their mutual custom for years, and pass their partnership checks in actual good faith to innocent third parties for current individual uses, and then later, after insolvency had ensued perchance, recover from such third parties, in the name of the firm, all the proceeds of its checks for the full period of the statute of limitations. Such a possible result is avoided by laying upon the partner adversely interested the burden of prompt repudiation of an alleged misappropriation, upon discovery thereof. Such a rule makes for the prompt detection of wrong-doing, and works no hardship upon anyone.

5. Garnishment: liability of garnishee: measure of liability.

Whether the cause of action upon which the judgment of the plaintiff herein was entered, accrued after the alleged misappropriation, or whether before, does not appear; nor was it material that it should appear.

Upon either hypothesis, the rights, if any, of the plaintiff as a garnisher, would be the same. As already indicated, they rise no higher than the rights of the partnership as such. Neither the act of Collins in passing the checks nor that of the garnishee bank in accepting the same could be deemed a fraud against the plaintiff as a partnership creditor. *First Nat. Bank of Indianola v. Brubaker*, 128 Iowa 587; *Smith v. Smith*, 87 Iowa 93, 98; *Poole, Gilliam & Co. v. Seney*, 66 Iowa 502. The case, therefore, involves no question of equities in favor of a partnership creditor. No question of accounting as between the partners is involved. The partners are undoubtedly entitled to that as between themselves. That could add nothing to the status of the plaintiff as a garnisher of this garnishee. The plaintiff, as creditor, has no right to an accounting as between the partners; nor has it any need of such a remedy. It has a complete remedy by execution against each partner.

We hold, therefore: (1) That the verdict rendered was contrary to the evidence; and (2) that the motion of the defendant at the close of all the evidence for a directed verdict should have been sustained. The judgment is, therefore, affirmed on the appeal of the plaintiff and reversed on the appeal of the garnishee, and the cause is remanded accordingly.—*Reversed and remanded.*

PRESTON, C. J., LADD, GAYNOR, and SALINGER, JJ., concur.